**Robert J. SHIPNER, Plaintiff-Appellant,**

v.

**EASTERN AIR LINES, INC., Defendant-Appellee.**

No. 87–5861.

United States Court of Appeals, Eleventh Circuit.

March 23, 1989.

---

Edward R. Lev, Larry L. Varn, Sullivan & Worcester, Boston, Mass., and Duncan J. Farmer, Moore, Farmer, Menkhaus & Juran, P.A., Boca Raton, Fla., for plaintiff-appellant.

Francis A. Anania, and James E. Tribble, Blackwell, Walker, Fascell & Hoehl, Miami, Fla., for defendant-appellee.

Before HATCHETT and CLARK, Circuit Judges, and FITZPATRICK *, District Judge.

* Honorable Duross Fitzpatrick, U.S. District Judge for the Middle District of Georgia, sitting by designation.

HATCHETT, Circuit Judge:

In this action between Eastern Airlines (Eastern) and one of its former officers for benefits under a severance agreement, we are asked to determine whether the district court correctly interpreted the agreement and properly entered summary judgment. Finding the district court's interpretation correct and summary judgment proper, we affirm.

## FACTS

In August, 1984, Robert J. Shipner, the appellant, accepted the position of Vice-President Flight Operations and Systems Chief Pilot with Eastern Air Lines. Prior to assuming this management position, Shipner had been an Eastern pilot for approximately twenty-six years, advancing to the rank of Captain in 1967. As a result of the Eastern Air Line Pilots Association (ALPA) collective bargaining agreement, Shipner preserved his Eastern pilot status while serving in the management position.

Amid rumors that Eastern was a takeover target, the Eastern Board of Directors offered severance agreements to Shipner and twenty of its officers and senior managers. On January 15, 1986, Shipner signed the severance agreement (Agreement) which provided benefits to him upon termination within twenty-four months of a "change in control of the Company." The Agreement defined a "change in control of the Company" to "have occurred if (1) any 'person' is or becomes the 'beneficial owner' ... directly or indirectly of securities of the Company representing 30% or more of the combined voting power of the Company's then outstanding securities...."

On March 26, 1986, Texas Air Corporation (Texas Air) acquired 47-percent of Eastern's outstanding common stock. By June 16, 1986, Texas Air reported that it had acquired 51.25-percent of Eastern's outstanding common stock. On July 1, 1986, Eastern dismissed Shipner as its Vice President Flight Operations and Systems Chief Pilot. Upon termination as an officer, Shipner returned to pilot duty. On October 1, 1986, Texas Air exercised control over Eastern after gaining Department of Transportation approval of the takeover.

## PROCEDURAL HISTORY

On August 4, 1986, Shipner filed a two-count complaint against Eastern alleging a breach of the Agreement. Count I alleged that Eastern breached the terms of the Agreement through its refusal to pay Shipner three times his annual salary of $165,000 and fringe benefits upon his dismissal as an officer. Shipner moved for a partial summary judgment on Count I; Eastern moved for summary judgment on both counts of the complaint. The district court, in a memorandum order, granted Eastern's motion for summary judgment.

In response to the district court's memorandum order, Shipner moved for leave to amend and supplement his complaint under Fed.R.Civ.P. 15(a) and (d). In a proposed Count III, Shipner requested a declaratory judgment on whether he would be entitled to receive benefits under the Agreement if he resigned as an Eastern pilot. In a proposed Count IV, Shipner sought recovery of legal fees and related expenses incurred during the litigation. The district court denied Shipner's rule 15 motion to amend and entered final judgment for Eastern.

In his reply brief filed in this court, for the first time, Shipner indicated that he has terminated his employment as an Eastern pilot and is no longer an Eastern employee in any capacity. Shipner contends that if we do not reverse the district court's summary judgment, we should remand this case for a ruling on the effect of his voluntary termination as a pilot under the Agreement. Eastern moves to strike portions of Shipner's reply brief and for a determination that the issue presented for declaratory relief raised in Shipner's brief is moot. In opposition to Eastern's motion to strike, Shipner responds that the issue of declaratory relief is moot.

## ISSUES

Shipner raises the following issues on appeal:

(1) whether the district court erred in ruling that the phrase "termination of your employment" in the Agreement is clear and unambiguous;

(2) whether the district court erred by refusing to consider extrinsic evidence of the parties' intent;

(3) whether the district court erred in denying Shipner's motion for partial summary judgment;

(4) whether the district court abused its discretion in denying Shipner's motion for leave to amend and supplement the complaint; and

(5) whether we should consider facts which developed during the pendency of this appeal.

## DISCUSSION

### I. TERMINATION OF EMPLOYMENT

■ The provision of the Agreement, paragraph 4, which gives rise to this case provides:

> 4. *TERMINATION FOLLOWING CHANGE IN CONTROL.* If a Change in Control of the Company occurs while you are an employee of the Company, you shall be entitled to the benefits provided in paragraph 8 below upon the termination of your employment within twenty-four (24) months after such event, unless such termination is as a result of (a) your 'Disability' (as defined in clause 4(i) below), (b) your 'Retirement' (as defined in clause 4(ii) below, (c) your death, (d) your termination by the Company for 'Cause' (as defined in clause 4(iii) below), or (e) termination by you for other than 'good reason' (as defined in clause 4(iv) below), in any of which events you shall not be entitled to receive termination benefits under this Agreement.

Shipner contends that the district court erred in ruling that the phrase "termination of your employment" is clear and unambiguous. He argues that the Agreement is ambiguous on its face as to whether the phrase "termination of your employment" means "termination of your employment as an officer" or "termination of your

employment as an employee." Shipner argues that a contract is ambiguous if it is "susceptible to either of the divergent meanings contended for by the parties," citing *Ocean Reef Club, Inc. v. UOP, Inc.,* 554 F.Supp. 123, 128 (S.D.Fla.1982).

Eastern contends that the phrase "termination of your employment" is unambiguous. Eastern argues that Shipner's attempt to alter the plain meaning of the phrase to connote "termination of your employment as an officer" is unreasonable, and that the district court's determination is correct.

We must independently review the district court's order granting summary judgment and determine whether any genuine issue of material fact exists. *Mercantile Bank and Trust Co. v. Fidelity and Deposit Co.,* 750 F.2d 838 (11th Cir.1985).

The district court found that the Agreement does not specify whether "termination of employment" means termination of employment as an officer of the company, or whether it means total severance of any employment relationship with Eastern. In interpreting the contract, the district court endeavored to determine whether the definition of "termination of employment" is ambiguous. The district court first examined the "four corners" of the Agreement to determine if the intent of the parties could be gleaned from the Agreement itself. The district court considered the preamble of the Agreement, and determined that these severance agreements were intended only for officers who filled critical management positions. The district court found the phrase "termination of employment" to be unambiguous. The court conceded that extrinsic evidence would support Shipner's contentions that the purpose of the Agreement was to keep him in the position of an officer, but it held that other terminology in the Agreement refuted this contention.

The district court found that the author of the Agreement foresaw a situation wherein new management could merely demote senior officers without terminating their employment with Eastern, thereby de-

feating the Agreement. To avoid this situation, the author of the Agreement provided, in paragraph 4(iv)(A), that termination of employment with benefits could be accomplished by resignation upon:

a change in your status or position(s) as an officer of the Company which, in your reasonable judgment, does not represent a promotion from your status and position(s) as was in effect immediately prior to the Change in Control of the Company....

The district court further found that Eastern removed Shipner as an officer at a salary of $165,000 per year, which resulted in his continued employment with Eastern as a pilot at a salary of $95,000 per year. Shipner concedes that Eastern did not reassign him to the lesser position, but that he reverted to that position due to his rights under the ALPA union contract. Nevertheless, the district court found that the fact of reversion did not detract from the inescapable conclusion that Shipner had the right to claim the benefits of the severance agreement upon refusing to accede to the demotion and submitting his resignation. The district court found that Shipner elected to accept his reduced status with the company and to also enforce his contractual benefits; which, according to the district court, Shipner could not do. The district court also found no ambiguity in the phrase "termination of employment" and ruled that the phrase means complete severance of any employment relationship with Eastern. We agree; we find no ambiguity and affirm the district court on this issue. *See Fabrica Italiana Lavorazione v. Kaiser Aluminum*, 684 F.2d 776 (11th Cir.1982).

## II. EXTRINSIC EVIDENCE

 Shipner also contends that Florida law required the district court to consider extrinsic evidence, not only to interpret the disputed language in the Agreement, but also to ascertain whether the language itself is ambiguous. *See Morris v. Federated Mutual Insurance Co.*, 497 F.2d 538, 540 (5th Cir.1974). Shipner concedes, however, that a Florida court may not consider extrinsic evidence to interpret a contract which is "clear and unambiguous." *See Atlas Sewing Center, Inc. v. Belk's Dept. Store*, 162 So.2d 274, 275 (Fla.App.1964). Shipner argues that the district court must necessarily examine extrinsic evidence to resolve the legal question as to whether a latent ambiguity exists. *See Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So.2d 544, 547 (Fla.App.1973).

Eastern counters that: (1) the district court did not refuse to consider extrinsic evidence; (2) the extrinsic evidence does not establish any ambiguity, latent or otherwise; and (3) the district court did not err in its disposition of this issue. Eastern contends that references made in the judge's memorandum opinion discuss a number of general background matters extrinsic to the Agreement. Eastern argues that where the language of a contract is clear and unambiguous, the court is bound to give the language its plain and ordinary meaning, may not add or subtract language from the face of the instrument, may not create a new contract for the parties, nor create an ambiguity where extrinsic evidence of unexpressed intentions exists and its intent can be easily inferred from the contract itself. *See Quesada v. Director, Federal Emergency Mgmt. Agency*, 577 F.Supp. 695, 697 (S.D.Fla. 1983), *aff'd* 753 F.2d 1011 (11th Cir.1985), *cert. denied sub. nom. Sodowski v. National Flood Ins. Program of Federal Emergency Mgmt. Agency*, — U.S. —, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988).

Because the phrase regarding employment is clear and unambiguous, the district court did not err in refusing to admit extrinsic evidence. Even so, the extrinsic evidence upon which Shipner relies adds nothing of significance to the background information recited in the preamble of the Agreement. This information shows that the purpose of the Agreement was to induce top management personnel to stay with Eastern during the period of uncertainty due to a potential takeover.

## III. OTHER CONTENTIONS

Because Eastern is an air carrier engaged in interstate commerce, Shipner con-

tends that Eastern is subject to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151–163, 181–185, 186 note, 187, 188, which require the term "termination of your employment" to be construed to mean "termination of your employment as an officer." Shipner argues that as a matter of law, the term "employment" in paragraphs 1(a) and 7 "the termination of which triggers Eastern's obligation to pay the benefits" can only be construed to refer to his employment as an Eastern officer. As a pilot, however, Shipner argues that he was a member of ALPA and protected from arbitrary termination under the grievance and arbitration provisions of the Eastern–ALPA collective bargaining agreement.

Shipner further contends that Florida law mandates that the contractual ambiguity in the term "termination of your employment" should be construed against Eastern, which drafted the agreement. Shipner cites several Florida cases which suggest that contract language is to be read most strongly against the party who selected it. *See, e.g., Finberg v. Herald Fire Insurance Co.,* 455 So.2d 462, 463 (Fla.App.1984); *Hurt v. Leatherby Ins. Co.,* 380 So.2d 432, 434 (Fla.1980).

Eastern contends that it was entitled to summary judgment because the terms of the contract were unambiguous. Alternatively, Eastern appeals the district court's holding that no change in control of Eastern occurred until October 1, 1986. The district court found that a change in control occurred when Texas Air acquired more than 30–percent of Eastern's common stock. The district court made this finding because the Agreement provided that a "change in the control of the company" occurs only if any person becomes the beneficial owner of Eastern's stock representing 30–percent or more of the combined voting power of the company's then outstanding securities.

When examining a decision denying or granting summary judgment, this court applies the same legal standards that control the district court's determination. Accordingly, we hold that the district court did not

err in denying Shipner's motion for partial summary judgment.

## IV. DECLARATORY RELIEF

Shipner also contends that his proposed amendments and supplemental facts set forth cognizable claims for declaratory relief which matured upon the district court's allowance of Eastern's motion for summary judgment. Shipner argues that the district court abused its discretion in denying his motion to amend under the provisions of Fed.R.Civ.P. 15. Shipner contends in his reply brief, however, that these declaratory claims as to his rights under the Agreement have become moot because he has voluntarily terminated his employment with Eastern. Shipner, however, reserves his claim for litigation expenses. Even though Shipner is no longer an Eastern employee, he asserts that his claim in proposed Count IV for litigation expenses remains viable. Thus, he argues that the district court's denial of his motion for leave to add proposed Count IV resulted in the deprivation of his right to an adjudication of the merits and was fundamentally inconsistent with Fed.R.Civ.P. 15.

Eastern contends, in a motion to strike portions of the reply brief that the claim for declaratory relief has been rendered moot by the fact that Shipner terminated his employment with Eastern. Eastern argues that this court may not consider facts which are not a part of the record on appeal when deciding the merits of the appeal, but it may consider subsequent factual developments in determining whether the issue on appeal is moot.

■■■ Even though both parties claim that this issue is now moot, we hold that the district court did not err in denying Shipner's motion for leave to amend and supplement the complaint. Fed.R.Civ.P. 15(a) governs amendments to pleadings and provides that after a responsive pleading has been filed, subsequent amendments are permitted only with leave of the court. The decision whether to grant leave to amend is committed to the sound discretion of the trial court. *Espey v. Wainwright,* 734 F.2d 748 (11th Cir.1984); *Best Canvas*

*Products and Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618 (11th Cir. 1983). Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires. *Espey* at 750. This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

■ The district court did not abuse its discretion in denying Shipner's motion to amend the complaint and supplement the record at a time when it had granted summary judgment, but had not entered final judgment. *See Schneider v. Russell Corp.,* 823 F.2d 422 (11th Cir.1987).

Even though Shipner concedes that an appellate court will not generally grant relief on the basis of facts or issues that were not presented to the district court, he argues that this rule does not apply with respect to supervening factual developments that occur after the entry of the judgment which is the subject of the appeal. Shipner argues that where circumstances have changed between the time of the district court's ruling and the decision on appeal, the preferred procedure is to remand and give the district court an opportunity to pass on the changed circumstances.

Eastern also argues that Shipner cannot request relief based on a fact that was not a part of the record on appeal. Because Shipner's voluntary termination of employment was not before the district court, Eastern had neither the opportunity nor a reason to discuss this development in its answer brief. Eastern argues that those portions of Shipner's reply brief in which Shipner seeks relief based upon this factual development should be stricken.

■ We will not consider factual developments which have occurred since the district court's order because those facts and issues were not presented to the district court. This decision is in line with *United States v. Oakley,* 744 F.2d 1553 (11th Cir. 1984) where we held that arguments raised for the first time in a reply brief are not properly before this court. *Oakley* at 1556.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

CLARK, Circuit Judge, dissenting:

Because my review of Shipner's "golden parachute" agreement with Eastern indicates that both Eastern's and Shipner's interpretations of the Agreement's key provisions are equally reasonable, I conclude that the district court erred in granting Eastern's motion for summary judgment because a genuine issue of material fact existed. I therefore dissent.

## I. Ambiguity Issue

The ambiguity issue in this appeal involves the interpretation of the phrase "termination of your employment" contained in one portion of the Agreement. Eastern argues it means "termination of your employment as an Eastern employee" while Shipner urges it means "termination of your employment as an officer." A review of the entire Agreement, however, makes it plain that Eastern created the lucrative "golden parachute" packages at issue in this case for its officers and key management officials, not for its pilots or other employees. These agreements were crafted for the purpose of retaining these officers and other key management officials who could be terminated or demoted following a change in Eastern's control.

Both the majority and the district court, however, have little difficulty in upholding Eastern's interpretation of the golden parachute Agreement as a matter of law despite acknowledging that Eastern drafted the Agreement to specifically apply only to its officers. The district court stated that the preamble to the Agreement makes it "clear that these severance agreements were intended only for officers who filled critical management positions. The agreements were not to be offered to lower level

employees who had no voice in the management of Eastern." Memorandum Opinion, at 5. The district court further interpreted the preamble to mean that the Agreement's clear purpose "is to induce [Shipner and other officers] to remain in the employ of the company." *Id.* at 6. The district court conceded that the Agreement was intended only for officers and senior management yet held that the Agreement's use of the phrase "termination of your employment" unambiguously means "termination of your employment as an employee" rather than "termination of your employment as an officer." The district court further conceded that extrinsic evidence supports Shipner's interpretation. *Id.*

My interpretation of the provisions in the Agreement is contrary to the district court's and majority's views. Because the Agreement fails to specify the meaning of the phrase "termination of your employment," an inquiry into the "four corners" of the entire document is necessary. Shipner argues that the phrase is unambiguous or, alternatively, that it has the two equally reasonable interpretations the parties advance. He further argues that a court may consider extrinsic evidence to explain a latent ambiguity. In support of his position, Shipner also asserts that the following intrinsic factors indicated that the phrase was intended to mean "termination of your employment as an officer" rather than "termination of your employment as an Eastern employee."

First, the Agreement's purpose, as indicated in its preamble, was to induce Shipner and other officers to remain with Eastern *as officers* during the pendency of a friendly or hostile takeover attempt. The "golden parachute" packages became effective only if an officer remained with Eastern but was subsequently terminated following a change in control. Shipner, however, argues that he needed no inducement to remain with Eastern as a pilot because his pilot position was protected by a collective bargaining agreement that required a grievance and arbitration procedure for termination. Thus, Shipner contends that the Agreement applies only in the situation where Eastern terminates his

employment as an officer following a successful takeover attempt.

Second, the Agreement was a standardized form contract that Eastern drafted to provide golden parachutes to Shipner and twenty other key management officials none of whom had an entitlement to an Eastern pilot's position. Shipner argues that this factor also indicates that the Agreement applies only in his capacity as an officer and does not explicitly or implicitly contemplate Shipner's unique situation.

Third, the Agreement erroneously states that Eastern could terminate Shipner at any time. Although Eastern had the power to terminate Shipner from his officer position, it did not have the power to terminate Shipner from his pilot position due to the collective bargaining agreement. In addition, another termination provision in the Agreement states that Eastern may terminate Shipner for cause (such as the commission of a felony). Again, Eastern cannot terminate Shipner as a pilot except through the grievance and arbitration procedures under the collective bargaining agreement.

Fourth, the term retirement as used in the Agreement is defined as termination of employment based on having reached the age of sixty-two which is retirement age for Eastern officers. Eastern pilots must retire at age sixty. Finally, the Agreement prohibits Shipner from "disclosing proprietary processes ... or other confidential information." Shipner argues that he is likely to possess such information as an Eastern officer but not as an Eastern pilot.

Under Florida law, the interpretation of a contract is for the court when the contract is unambiguous; when a contract's term is reasonably susceptible of more than one interpretation, however, it is ambiguous and the resolution of its meaning is for the jury. *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.,* 684 F.2d 776 (11th Cir.1982); *Laufer v. Norma Fashions, Inc.,* 418 So.2d 437, 439 (Fla. Dist.Ct.App.1982) (a contract phrase is ambiguous when it is uncertain of meaning

and disputed; its meaning must be determined as an issue of fact). A true ambiguity, however, does not exist merely because a contract can possibly be interpreted in more than one manner. *Amer. Med. Intern, Inc. v. Scheller*, 462 So.2d 1, 7 (Fla.Dist.Ct.App.1984), *review denied*, 471 So.2d 44 (Fla.1985), *cert. denied*, 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985).

Shipner's recitation of factors intrinsic to the document raises a factual issue regarding which of the two competing interpretations must prevail. Because Shipner's interpretation of the phrase at issue is not just merely a *possible* interpretation but an equally reasonable interpretation, an ambiguity exists which a jury must resolve. Furthermore, because an ambiguity exists, extrinsic evidence is also admissible to resolve the latent ambiguity. *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So.2d 544, 547 (Fla.Dist.Ct.App.1973) (latent ambiguity arises where language employed is clear and intelligible and suggests a single meaning but some extrinsic evidence creates a necessity for interpretation among two or more meanings).

Ironically, the majority supports its holding by citing *Fabrica Italiana,* a case in which this court upheld the trial court's submission to the jury of an issue regarding the meaning of a contract term that had two reasonable interpretations. Because it is abundantly clear to me that the phrase "termination of your employment" is ambiguous as a matter of law, I similarly cite *Fabrica Italiana* in support of my conclusion. The district court erred in deciding that the Agreement was unambiguous and summary judgment was inappropriate. I would therefore remand the case to the district court for a trial on the merits.

## II. The "Good Reason" Clause

My disagreement with the majority also extends to its consideration of the so-called "Good Reason" or "Demotion" clause which provides that following a takeover an officer may voluntarily trigger termination with Eastern for "Good Reason" and still receive the severance package. "Good Reason," in pertinent part, means:

a change in your status or position(s) as an officer of the Company which, in your reasonable judgment, does not represent a promotion from your status and position(s) as was in effect immediately prior to the Change in Control of the company or the assignment to you of any duties or responsibilities which, in your reasonable judgment, are inconsistent with this status or position(s), or any removal of you from or any failure to reappoint or re-elect you to such position(s), except in connection with the termination of your employment for Cause, Disability or Retirement or as a result of your death or by you other than for Good Reason.

Agreement, at 4. The clause requires at a minimum that Eastern demote or reassign an officer to some employment position that arguably represents a detrimental change in his status or position.

The majority agrees with Eastern's argument that the inclusion of this "Good Reason" provision was presciently inserted into the Agreement to apply in the situation at hand. In the majority's view, the "Good Reason" clause requires that Shipner terminate all employment with Eastern by voluntarily renouncing his right to return to his safeguarded pilot's position to receive his "golden parachute."

I disagree with the majority's view that Shipner must voluntarily invoke the "Good Reason" or "Demotion" clause in order to receive benefits under the Agreement. Eastern could not nullify Shipner's right to return as a pilot and the record and the Agreement are devoid of any indication that Shipner bargained away or renounced his valuable right to remain as an Eastern pilot by accepting the Agreement. In fact, the majority recognizes that the contrary is true—Shipner maintained his right to his pilot position during his tenure as an Eastern officer. Consequently, Eastern exercised the total extent of its power by *terminating* Shipner from his position as an officer; it could not further deprive him of his pilot position. Thus, Eastern did not demote or reassign Shipner, it *terminated*

him within the meaning of the Agreement.[1] The majority's reliance on the "Good Reason" or "Demotion" clause is, therefore, unnecessary.

The majority, however, goes on to misconstrue the purpose of this clause which is to protect *officers* from successful corporate raiders who could deprive incumbent management of their "golden parachutes" by shifting (i.e. demoting) these officers from their current positions to less desirable ones without incurring the costs of the severance packages. The clause, therefore, protected Shipner from Eastern's new management demoting him from his position as an officer to some less desirable position following a takeover. This situation contrasts with what actually occurred.

Prior to the Eastern takeover, Shipner was entitled to both his officer and pilot positions. After the takeover, Eastern terminated Shipner from his officer position. Shipner, however, retained his rights in his formerly-established pilot position. Thus, Eastern did not "demote" Shipner to his pilot position because Shipner already was entitled to the position. A demotion would have necessarily required Eastern to voluntarily retain Shipner in a position from which it could have terminated him. Instead, Eastern *terminated* Shipner as an officer of the company and did not re-appoint him to another position.

Had Eastern demoted Shipner after the takeover from his senior officer's position to a mid-management position, Shipner could have invoked the "Good Reason" clause and argued that there was a change in his status or position. In this situation, he is "demoted" because Eastern shifted him from his position as an officer to another less-desirable position and one to which he was not previously entitled. Instead, Eastern *terminated* Shipner in his officer's position and he returned voluntarily to his safe-guarded pilot position. The "Good Reason" clause simply does not apply in this instance.

---

1. Notably, the majority agrees that Eastern did not reassign Shipner to his pilot position but

III. Summary

Finally, I would follow the principal tenet of contract law that a provision in a contract is construed most strongly against its drafter. *Sol Walker & Co. v. Seaboard Coast Line R. Co.*, 362 So.2d 45, 49 (Fla. Dist.Ct.App.1978). The Eastern officials that drafted these agreements intended that the company's incumbent officers have a safe landing following a successful takeover attempt. Although it is not surprising that Eastern's new management does not want to honor the agreements and advances an interpretation of the Agreement to support its position, I believe the law requires that any ambiguity should be resolved against Eastern in Shipner's favor. I would remand to the district court for further proceedings on the merits.

that Shipner reverted to the position.