**Louis A. SIEGEL**

v.

**TRUETT–McCONNELL COLLEGE, INC., et al.**

**No. CIV. 2:93–CV–148–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Nov. 3, 1994.

Louis A. Siegel, Athens, GA, pro se.

Robert M. Rosenberg, Office of Robert M. Rosenberg, Houston, TX, for plaintiff.

William H. Blalock, John Randall Frost, Stewart Melvin & Frost, Gainesville, GA, Edward H. Lindsey, Jr., Leslie Stewart Sullivan, Goodman McGuffey Aust & Lindsey, Atlanta, GA, James P. Guenther, James D. Jordan, Jason B. Rogers, Guenther & Jordan, Nashville, TN, for defendants.

## ORDER

O'KELLEY, Chief Judge.

Presently before the court is plaintiff's motion to extend time [35–2], plaintiff's motion to compel further discovery and impose sanctions on the defendants [35–1], plaintiff's motion for reconsideration of the court's April 7, 1994 order [36–2], and plaintiff's motion to amend his complaint [36–1]. The defendants filed a motion for summary judgment [37–1] which occasioned more motions from the plaintiff, including a motion to extend time to file a reply [40–1], a motion to supplement the response [45–1], and a motion for leave to respond to Defendants' Memorandum in Reply to Plaintiff's Response to Motion for Summary Judgment [49–1].

### Factual Background

Truett–McConnell College (the "College") is a private, Christian, co-educational college of liberal arts and sciences founded by the Baptist Convention of the State of Georgia (the "Georgia Baptist Convention"). The College is a non-profit corporation operated under the auspices of the Georgia Baptist Convention which fixes the number and terms of office of the College trustees and adopts rules governing the filling of vacancies on the board. The College's charter provides that the government and control of the College shall be vested in a board of trustees to be elected by the Georgia Baptist Convention. The College's bylaws require that at least twenty-five percent of the members of the College's board of trustees be

ministers of the Gospel in accordance with doctrine and practice of the Convention. The College contends that its right to discriminate on the basis of religion in the hiring of its faculty members is critical to its ability to carry out its purpose of maintaining a spiritual and intellectual community of faculty and staff dedicated to the pursuit of faith, scholarship and free inquiry.

On May 27, 1992, Truett–McConnell College and the plaintiff contracted for Siegel to teach a summer quarter course in sociology at the College's off-campus site in Watkinsville, Georgia. Before Siegel began teaching, the College notified Siegel that his contract was terminated. Siegel contends that he had spent approximately 200 hours preparing the course materials for the class before his contract was terminated. The college paid Siegel the full $1,000 compensation called for in his contract.

The parties disagree over the length of the teaching contract. The College contends that the contract was for one term only, with no right of renewal. Mr. Siegel contends that there were indications from Dean Claude Smith that he could secure a job for the plaintiff at Brenau University. In addition, plaintiff contends that Watkinsville Site Director Kay Shepard sought from plaintiff assurances that he would be available to teach on a year-round basic and would be able to teach approximately four to six courses per year. The parties agree that Siegel was fired because he was not a Christian. Siegel filed a claim with the Equal Employment Opportunity Commission alleging that the College's termination of his contract was illegal employment discrimination on the basis of his religion. In February 1993, the EEOC dismissed Siegel's claims, finding the College free to discriminate in employment on the basis of religion.

Plaintiff has sued Truett–McConnell College, its directors and some key employees alleging that the defendants violated Title VII of the Civil Rights Act of 1964 by discriminating against him in employment on the basis of his religion. Defendants agree that plaintiff's teaching contract was terminated because of his religion but contend that the defendants had the right to terminate plaintiff as an exercise of the College's rights under Title VII to discriminate in employment on the basis of religion. Defendants contend that the only issue posed by this lawsuit is whether the College is entitled to the exemption in 42 U.S.C. § 2000e–2(e)(2). Plaintiff contends that Truett–McConnell College may not avail itself of the exemption contained in 42 U.S.C. § 2000e–2 for numerous reasons, including that the college receives a substantial amount of government funds.

### Legal Analysis

#### I. Plaintiff's Motion to Compel and Motion for Extension of Time

##### A. Motion to Compel

 Plaintiff's motion to compel and motion for sanctions are premature. The court has no evidence before it that proper notice was given for any of defendants' witnesses to appear at a deposition. The notice required for depositions is well-defined in the Federal Rules of Civil Procedure, Rule 30(b)(1) and (2). Without proper notice there can be no failure to appear. Plaintiff's motion to compel and his motion for sanctions are hereby DENIED. However, as requested by the plaintiff, the court will consider the motion as a motion for leave to conduct further discovery under Rule 30(a).

Plaintiff has asked defendants to set eight additional depositions. Plaintiff has already taken 12 depositions, including deposing two witnesses a second time. Thus, plaintiff has already exceeded the ten depositions permitted under the Rules of Civil Procedure, Rule 30(a)(2)(A). Rule 30(a) triggers judicial review if the number of depositions is to exceed 10. The court will examine the request and consider the burden and expense which are to be evaluated in light of the Rule 26(b)(2)(iii) factors. The court should order depositions in excess of the permitted number only if

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance

of the proposed discovery in resolving the issues.

Fed.R.Civ.P., Rule 26(b)(2)(iii).

The burden of the proposed discovery outweighs its likely benefit because the proposed depositions are not relevant to the subject matter. The only issues pending in this action involve plaintiff's employment discrimination claim and his termination from his teaching position. Plaintiff has not established that the testimony of his proposed deponents is relevant or that he has a specific need for the testimony to prepare for trial. Plaintiff's request is burdensome because the testimony is not needed to resolve the issues at stake in the pending litigation. The court also notes that the taking of 8 more depositions that are not relevant to the causes of action before the court creates a financial burden and disruption to defendants.

Plaintiff's own descriptions of the testimony sought demonstrate that the depositions are unrelated to the subject matter of the claims and defenses currently before the court. For example, in plaintiff's memorandum accompanying the instant motion, he states that he wants to depose some additional witnesses to determine if dual service to the College and the City of Cleveland violated "several regulations and laws" and created "false statements, conflict of interest and violation of church-state principles." (Plaintiff's Memorandum, p. 10). These concerns do not bear on plaintiff's employment discrimination claim. Plaintiff apparently wants to start on discovery which he hopes will support his proposed "taxpayer claim" not currently before the court. In this order, the court denies plaintiff's request to amend his complaint to include the taxpayer claim. Therefore, many of plaintiff's discovery requests are unnecessary.

Another reason the plaintiff provides for asking the court to order more depositions is to let plaintiff examine witnesses about the alleged use of College buildings for religious activities and the role of prayer and religion in the curriculum of the College. Plaintiff claims that this testimony bears on defendants' claim of 42 U.S.C. § 2000e–1 as a

defense to his civil rights action. Plaintiff's Memorandum, pp. 10–11. Defendants respond that they have not asserted, and do not intend to assert, § 2000e–1 as a defense in this matter. Therefore, such depositions are irrelevant under Rule 26(b).[1] For the above-discussed reasons, the court declines to permit plaintiff to conduct further discovery in this case.

### B. *Motion for Extension of Time*

Plaintiff has also requested an extension of time for the filing of dispositive motions. Defendants respond that they have no objection to suspending the deadline for plaintiff to file his motion for summary judgment. However, they do object to plaintiff's request that he not be made to answer defendants' motion for summary judgment until 65 days after any additional discovery takes place. On May 23, 1994, plaintiff responded to the defendants' motion for summary judgment. The court considered that response in issuing this order. Therefore, that part of plaintiff's motion for an extension of time is moot. As the defendants agreed to suspending the deadline for plaintiff to file his motion for summary judgment, the court will DENY that portion of plaintiff's motion for extension of time that pertains to his filing a motion for summary judgment as moot.

### II. Plaintiff's Motion to Supplement and Motion for Leave to File

Plaintiff filed a motion for leave to supplement with errata sheet his Response to Motion for Summary Judgement filed on May 23, 1994. The court hereby GRANTS plaintiff's motion to supplement and notes that it considered the corrected version of the brief in ruling on defendants' motion for summary judgment.

Plaintiff also filed a motion for leave to file a Response to Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment. Plaintiff states correctly that the defendants filed their reply later than allowed by the Local Rules. *See* Local Rule 220–1(b)(2). Defendants also filed a Revised

---

**1.** The court and the plaintiff are relying on this statement by the defendants that they will not raise § 2000e–1 as a defense. If the defendants do raise this issue, then the court will reconsider granting discovery on these matters.

Statement of Material Facts with their reply. Plaintiff contends that the defendants filed new documentary evidence and mischaracterized the facts and law relevant to the case. The court hereby GRANTS plaintiff's motion and allows him to file his response. The court notes that it considered the response in ruling on defendants' motion for summary judgment.

### III. Defendants' Motion for Summary Judgment

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), amended in 1972, prohibits employers from discriminating against employees on the basis of religion. However, the statute provides an exemption for some educational institutions.

> ... [I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association or society
>
> . . . .

42 U.S.C. § 2000e–2(e)(2). The College relies on the exemption in 42 U.S.C. § 2000e–2(e)(2) to establish its right to discriminate in employment on the basis of religion. The College alleges that it is wholly or substantially owned, supported, controlled and managed by the Georgia Baptist Convention and other Baptist religious organizations.

Congress and the Supreme Court have recognized that religious groups have a constitutionally protected interest in applying religious criteria to at least some of their employees. Thus, Title VII contains an exception to allow religious organizations to discriminate on the basis of religion. *See* 42 U.S.C. § 2000–2(e)(1). In *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 336–339, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), the Supreme Court held that the application of Section 702 of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e–1, to the secular non-profit activities of a religious organization does not violate the Establishment Clause of the First Amendment. Therefore, "whether an employee's duties within the non-profit organization are secular or not, the religious exemption can be used as a basis for termination." *Dodge v. The Salvation Army, et al.*, 1989 WL 53857, *2 (S.D.Miss.1989). Courts must no longer delineate between religious activities and non-religious activities in determining whether plaintiff's job was one in which Truett–McConnell could apply the 2000e–2(e)(2) exemption.[2] The court must now determine if the College qualifies for the exemption in 42 U.S.C. § 2000e–2(e)(2).

#### A. Burden of Proof

Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56(c) of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Id.*

In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence

---

**2.** In 1972, Congress broadened the scope of the exemption by deleting the word "religious" from a phrase which had limited the permissible discrimination to individuals of a particular religion

hired to carry out the employers "religious activities." *See Maguire v. Marquette University*, 627 F.Supp. 1499 (E.D.Wis.1986).

from which the trier of fact might return a verdict in his favor. *Samples,* 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–8, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The materiality of facts is governed by the substantive law. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party: the non-moving party still bears the burden of coming forth with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990) (emphasis in original); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "If on any part of the prima facie case there would be insufficient evidence to require submission of the case to the jury, [the court] must ... grant ... summary judgment for the defendant." *Earley,* 907 F.2d at 1080 (citations omitted). In *Earley,* the Eleventh Circuit further emphasized:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.... Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case .... In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial .... If the evidence is *merely color-*

*able,* or is *not significantly probative,* summary judgment may be granted.

*Id.* (emphasis in original) (citations omitted).

### B. Defendants' Argument for the 2000e–2(e)(2) Exemption

█ Whether Truett–McConnell College is substantially controlled by the Georgia Baptist Convention is a question of law.[3] In determining whether a college or school qualifies for the 2000e–2 exemption, all religious and secular characteristics must be weighed and considered. Section 2000e–2(e)(2) does not exempt an institution that is merely affiliated with a religious organization. Only those institutions with extremely close ties to organized religion will be covered. The Ninth Circuit recently addressed what areas should be examined in determining whether a school qualifies for a religious exemption under 42 U.S.C. § 2000e–2(e)(2) and emphasized that the decision will turn on the particular facts of each case. *See E.E.O.C. v. Kamehameha School/Bishop Estate,* 990 F.2d 458, 460–464 (9th Cir.1993).

### 1. Support, Operation and Affiliation

The Baptist Convention of the State of Georgia founded Truett–McConnell College. The College is a non-profit corporation operated under the auspices of the Georgia Baptist Convention. Truett–McConnell's charter provides that the "government and control" of the College corporation "shall be vested in a Board of Trustees to be elected by the Georgia Baptist Convention." The College's charter states that it may be amended only after consent and approval is given by the Georgia Baptist Convention.

The College also receives monetary support from the Georgia Baptist Convention. For the fiscal year ending June 30, 1992, the College received cash contributions of approximately $714,934 from the Georgia Baptist Convention, local associations of Baptist churches, and local Baptist congregations. *See* Affidavit of Donald Stanley. These funds, $615,531 of which came from the Geor-

---

**3.** The court agrees with plaintiff that the Georgia Baptist Convention does not "own" Truett–McConnell in the strict sense of that word. However the College need not be owned to quali-

fy for the 2000e–2(e)(2) exemption; it can also be supported, controlled, or managed by the Georgia Baptist Convention and qualify for the exemption.

gia Baptist Convention alone, demonstrate substantial support by a particular religion. The fact that the College receives financial support from other sources does not render its support from Baptists insubstantial. Defendants state that this money is enough to pay the salaries and benefits of 19 of the 25 full time faculty at the College's Cleveland campus.

A last area of financial support involves the Georgia Baptist Foundation, which holds the endowment funds of the College in trust for the benefit of the College. The Foundation is a nonprofit, religious corporation fostered and supported by the Baptist Convention of the State of Georgia. The Convention elects the Foundation's board of trustees. The College's endowment funds are held by the Foundation for the College under a perpetual irrevocable trust.

## 2. Faculty and Trustees

The College's bylaws require that at least twenty-five percent of the members of the College's board of trustees be ministers of the Gospel in accordance with the doctrine and practice of the Georgia Baptist Convention. Twenty-six percent of the persons listed as trustees on page 62 of the College's 1991–92 catalog are ministers. *See Maguire v. Marquette University*, 627 F.Supp. 1499, 1501 (E.D.Wis.1986)(examining the factors that led to the court's finding that Marquette University is in substantial part managed by the Jesuits).

The College's faculty handbook states that "[a] faculty applicant who is considered for employment must be a professing Christian, an active church member, and must indicate an appreciation for and commitment to the stated purpose of Truett–McConnell College." [4] Plaintiff submitted documents which purport to represent faculty statistics for the College. The defendants did not object to these "exhibits" and the court will accept them as true for purposes of this summary judgment motion. These documents indicate that the College had approximately 45 full-time and adjunct faculty who taught on-campus, and 112 full-time and part-time faculty for off-campus programs in 1992. The plain-

tiff also provided some figures for the religious affiliation of both on-campus and off-campus faculty from 1988 to 1993. The religious affiliation of full-time faculty on the main campus were listed as follows: Baptist 23, Episcopalian 4, Methodist 4, Catholic 2, Congregational 1, and Evangelical Free Church 1. Adjunct faculty on the main campus were listed as follows: Baptist 11, Christians 5, Lutheran 1, Methodist 4. Thus, 66% of full-time faculty and 52% of part-time faculty on the main campus, for the period 1988–1993, were Baptist; 100% were Christians. The faculty at the satellite campuses was identified as part-time and the religious breakdown was listed as follows: Baptist 179, Methodist 73, Episcopal 26, Presbyterian 52, Unitarian 6, Pentecostal 2, Catholic 27, Independent 1, Christian 7, United Church of Christ 2, Jehovah's Witness 1, Church of the Nazarene 1, Church Member 1, Assembly of God 6, Seventh Day Adventist 3, Non–Denominational 3, Unity Christian 1, Evangelical Free Church 1, Protestant 4, Congregational 1, Church of God 1, Church of Christ 3, Anglican 1, Lutheran 4, and Mormon 1. The court has no information on how often or how many classes part-time faculty teach.

## 3. Real Property

Article 1, Section 1 of the College's bylaws states, "All original real property is held in trust by the Executive Committee of the Georgia Baptist Convention." In 1954, the Education Division of the Georgia Baptist Convention recommended that the Convention vote whether to allow Truett–McConnell College to remain in Cleveland, Georgia, or whether to move it to another location. By a vote of 456 to 285, the Convention voted to keep the College in Cleveland and affirmed its intention to "make a heavy investment in the building of an adequate plant for the college at its present location." The plaintiff spends a great deal of his argument focusing on who owns the real estate that comprises the College's main campus. The court does not find it necessary to reach the ownership issue as this decision relies on the language in § 2000e–2(e)(2) which also provides an

---

**4.** Plaintiff disputes whether this policy was ever put into effect by the College and states that he did not receive the faculty handbook until after the lawsuit was filed.

exemption for those colleges which are in substantial part supported, controlled or managed by a particular religion. However, in addition to the language in the bylaws which states that all real property is held in trust by the Executive Committee, the plain language of the deeds also vests fee simple title to the property in the Executive Committee of the Georgia Baptist Convention.

The three deeds submitted to the court each reflect a conveyance in fee simple from the respective grantors to the Executive Committee of the Baptist Convention of the State of Georgia. Only the deed from L.G. Neal to the Executive Committee contains a right of reverter which states, "In the event the above described property ceases to be used for school purposes by the grantee herein, said property to revert to the grantor or his heirs and assigns." L.G. Neal extinguished the right of reverter in 1962 when he executed a warranty deed which states that its purpose is to rescind the reversionary clause contained in Neal's 1946 deed to the Executive Committee. The court finds that there is no dispute that the property represented by the three deeds constitutes the College's main campus in Cleveland, Georgia, and the language of the deeds expressly vests in the Executive Committee title to the land in fee.

Plaintiff contends that the off-campus program is operated in facilities that are owned by local public school systems that receive funding from the State of Georgia. Plaintiff further alleges that the college receives benefits from the state by paying no rent or paying rent which is below market value for the use of state facilities. Plaintiff then jumps to the conclusion that if Truett–McConnell was supported in part by the Baptist church, then these economic benefits the College receives from the state would be a violation of the Georgia Constitution. This court is not adjudicating the plaintiff's taxpayer claim and will not reach the issue of whether the College properly receives government funds.[5] The facts indicate that even if some off-campus programs occur in public facilities, the College is still supported in substantial part by a religious organization.

### 4. Purpose

The Education Division of the Georgia Baptist Convention produces promotional material designed to publicize its contributions to and encourage enrollment at various colleges, including Truett–McConnell College. The Education Division of the Georgia Baptist Convention coordinates that portion of the Convention's ministries which are conducted through the Baptist colleges in Georgia affiliated with the Convention. The Education Division administers the Georgia Baptist Student Achievement Award Scholarships, a scholarship program funded in part by the Georgia Baptist Foundation. The program awards scholarships to outstanding young students from Georgia Baptist churches who attend Georgia Baptist colleges. Some students who attend Truett–McConnell receive awards under this scholarship program.[6]

### 5. Student Body

In the Fall of 1991, 1636 students were enrolled at Truett–McConnell College. The defendants did not provide the court with a breakdown of how many of those 1636 on-campus students were Baptist. While the exact numbers were not provided to the court for off-campus enrollment, the percentage of students in the off-campus programs from 1990 to 1993 who identified themselves as Baptist was 40.6%. The second largest group that identified themselves with a denomination were the Methodists at 9.2% of the off-campus population. Some of those asked did not respond or marked "Other" as their religion; this figure was 33.7%.

---

**5.** The plaintiff also makes this same argument with respect to the money the College receives from the state and federal government for its prisoner education programs conducted for individuals who are incarcerated. Whether the College is violating the Georgia Constitution is not the issue in this case.

**6.** The defendants did *not* indicate how many students attending Truett–McConnell receive awards under the scholarship program.

### 6. Curriculum

Neither side provided the court with much information in this area. Religious instruction and education would definitely be a factor for courts to consider in cases of this nature. Plaintiff states that the students are required to take only one course classified as religion and that this course is really a critical survey of literature, history and religion. Plaintiff does not provide any documentation to support these statements and defendants do not address this area at all. The College does offer a ministerial studies program, however it appears that only thirty students are actually pursuing this course of study. Plaintiff contends that the satellite campuses operated by Truett–McConnell are secular in nature and operate for profit. Plaintiff provides no evidence to demonstrate the profit such campuses make.

### C. Plaintiff's Claims

Plaintiff first contends that Truett–McConnell is not controlled or owned by the Georgia Baptist Convention and, therefore, does not qualify for the 2000e–2(e)(2) exemption. Plaintiff then argues that even if the College is eligible for the 2000e–2(e)(2) exemption, his particular position as a teacher is not eligible for the exemption because the College receives substantial government funding. The plaintiff draws a distinction between teaching at an off-campus site of the College and teaching on the main campus. Plaintiff alleges that the off-campus programs generate profits and are substantially funded by federal and state government. Plaintiff finally contends that the parties who hired him knew he was Jewish and, thus, waived their right to the 2000e–2(e)(2) exemption.

### 1. Control and Ownership

■ Plaintiff argues that the Georgia Baptist Convention does not control, support or own the College and cites to numerous depositions of individuals associated with Truett–McConnell College, including Dr. H.M. Fulbright, the President of the College when Siegel was hired, Dr. Edwin Cliburn, the former Assistant Executive Director and Treasurer for the Executive Committee for the Georgia Baptist Convention, and Dr. Hugh Kirby, a member of the board of trustees, to support this argument. Summing up the testimony of these individuals, they basically described the relationship between the Georgia Baptist Convention and the College as one of voluntary cooperation. Plaintiff contends, through the submission of deposition testimony, that although the Convention may have some influence over the College, it is not called upon to exercise it very often. The key College personnel that plaintiff deposed are not lawyers and are not competent to give opinions on the existence of legal control. Thus, "evidence" submitted by defendant is opinion evidence and does not legally support his claim.

Plaintiff attempts to argue that no control exists because the Georgia Baptist Convention does not continuously wield the power of control to dictate the actions of the College. The court finds, after a careful examination of the factors identified above, that the Georgia Baptist Convention does control Truett–McConnell in substantial part because it has the power to direct, restrict and govern the College. The fact that the Convention is not constantly at odds with the board of trustees does not show a lack of control; instead it shows a cohesive organization. The Georgia Baptist Convention does not manage and does not need to manage the day-to-day operations of the College to have control. The Georgia Baptist Convention chooses to respect the corporate identity of the College and does not treat the College as an altar-ego.

The Georgia Baptist Convention controls the College through a line of accountability running from the administration to the trustees to the Georgia Baptist Convention. The College's administration must answer to the board of trustees, who have the power to hire and fire the administration. The board of trustees is accountable to the Georgia Baptist Convention, who elected and can replace them as trustees of the College. This accountability is secured within the corporate charters and bylaws discussed above. The court finds that, as a matter of law, this accountability constitutes control.

### 2. Government Funding

Plaintiff relies on a case from the Southern District of Mississippi to argue that even if the religious exemption allows Truett–

McConnell College to terminate his employment based on religious grounds, his position was funded so substantially by the federal and state government that the 2000e–2(e)(2) exemption is prohibited in his case. *See Dodge v. Salvation Army,* 1989 WL 53857 (S.D.Miss.1989). This court finds that the *Dodge* case is factually distinguishable from the case currently before it. In *Dodge,* the court found that the government had *substantially, if not exclusively,* funded the position of Victims' Assistance Coordinator at the Salvation Army. The position Ms. Dodge held was created because the Salvation Army received a grant from the Criminal Justice Department.[7] *Id.* at *2. The Salvation Army could not then turn around and fill or maintain the position based on religious preference without unconstitutionally advancing religion. *Id.* at *3–4.

The facts in Siegel's situation do not show that there is any direct federal or state subsidy of a church-sponsored school or college. Plaintiff contends that the College receives a substantial amount of money from the state and federal government, but never provides any evidence of where this money comes from, what this money is used for, or even how much money he is talking about. The court assumes that the plaintiff is referring to various grants and government programs which provide money to *students* to attend colleges of their choice.[8] The *students* then choose which school they will attend and, thus, which school will receive their tuition. The government money does not go directly to any particular school. The government does not directly pay for any one teacher's salary, including Mr. Siegel's salary. This case is thus distinguishable from the fact situation in *Dodge.*

■ "A law is not unconstitutional simply because it *allows* churches to advance reli-

gion, which is their very purpose." *Corporation of Presiding Bishop v. Amos,* 483 U.S. 327, 337, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987). The government has not abandoned its neutrality in deciding to provide funds for students to attend schools. The government is not promoting a particular point of view in religious matters. Students could take Pell grants, for example, and attend Truett–McConnell, the University of Georgia or Notre Dame. The use of government funds to attend Truett–McConnell College does not violate the Establishment Clause. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (applying a three part test to determine whether an activity is religious). The monies plaintiff refers to are, in all likelihood, available to all institutions of higher learning, whether or not they have a religious affiliation.

■ The court does not see how a student's use of his or her grant money to choose to attend a religious educational institution can support the argument that the government itself is advancing religion through its own activities and influences. Government funding of education does not single out religious entities for a benefit; Truett–McConnell is not receiving direct financial support from the government. Public aid to higher education is unconstitutional only if the government is directly funding explicit religious activities. *See Roemer v. Board of Public Works of Maryland,* 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976); *Hunt v. McNair,* 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973); and *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (all holding that religiously affiliated institutions of higher education are eligible for direct public funding and support so long as the funding is not for explicitly religious activities).[9]

---

7. The Salvation Army's grant application requested a total of $30,241.00, with $14,353.00 to fully fund the position of Victims' Assistance Coordinator. *Dodge,* at *2.

8. At one point plaintiff refers to federal monies received through the Department of Energy as well. The College may receive some financial assistance to implement energy conservation projects pursuant to Title III of the National Energy Conservation Policy Act. However, the arguments that pertain to student aid also pertain to

grants provided to institutions or organizations, be they religious or not, that receive federal monies for energy conservation. Such a grant cannot be said to directly support religion.

9. *See also Witters v. Washington Dept. of Services for Blind,* 474 U.S. 481, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986) (a disabled recipient of vocational rehabilitation funds could use the funds to pay tuition at a private Christian college where he was studying to become a minister).

Plaintiff may be correct in stating that the College receives significant income from non-Baptist sources, such as student tuition and prison education programs. Plaintiff alleges that the College receives far more money from the federal and state government than it does from the Baptist Church, and contends that approximately $2 million in revenues was received from the off-campus programs, accounting for 39% of the College's total income. However, defendants do not have to show that Baptist funding is the sole, principal or even primary source of the College's support in order to qualify for the 42 U.S.C. § 2000e–2(e)(2) exemption. The $714,934 in annual funding from Baptist sources discussed above is not an insignificant amount and shows support from the Baptist church. The receipt of funds from the government or from off-campus programs does not change the fact that the College is in substantial part, supported, controlled, and managed by a particular religion, the Baptist Church.

### 3. Waiver of the Exemption

■ Siegel argues that even if the College's decision is exempted from Title VII, the College waived those exemptions when it knowingly hired a Jew. This argument incorrectly views the exemptions to Title VII as something that the parties can waive. Instead, the exemptions reflect a decision by Congress that religious organizations have a right to be free from government intervention. "Once Congress stated that '[t]his title shall not apply' to religiously motivated employment decisions by religious organizations," no act by Siegel or the College could expand the statute's scope. *Little v. Wuerl*, 929 F.2d 944 (3rd Cir.1991).

In sum, the court finds that Truett–McConnell College is eligible for the § 2000e–2(e)(2) exemption because it is in substantial part supported, controlled and managed by the Baptist convention. After careful examination of all the evidence presently before it, the court hereby finds that the plaintiff cannot demonstrate at trial that Truett–McConnell College violated Title VII of the Civil Rights Act of 1964 by discriminating against him in employment on the basis of religion. The College is entitled, as a matter of law, to discriminate in employ-

ment on the basis of religion under the express terms of 42 U.S.C. § 2000e–2(e)(2). As there is no genuine issue of material fact the court hereby GRANTS defendants' motion for summary judgment.

### IV. Plaintiff's Motion for Leave to File an Amended Complaint and Motion to Reconsider April 7, 1994 Order

In an April 7 order, this court denied the plaintiff's motion for leave to amend his complaint, finding that the motion did not state with particularity the grounds of the new claims and, thus, did not conform with Fed. R. Civ. Pro. 7(b)(1). Plaintiff has filed a motion for the court to reconsider that April 7 order and has also filed a motion to further amend his complaint. Plaintiff does provide more specific allegations in his new amendment, thus, addressing some of the issues the court raised in its April 7 order. The court hereby GRANTS plaintiff's motion to reconsider.

■ Under Rule 15(a), Fed.R.Civ.P., "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the decision whether to grant leave to amend a pleading is within the district court's discretion, such a motion should be granted unless a substantial countervailing reason exists. *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir.1990); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406–07 (11th Cir. 1989); *Halliburton & Assocs. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir.1985); *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1574 (11th Cir.1985); *Nilsen v. City of Moss Point, Mississippi*, 621 F.2d 117, 120 (5th Cir.1980); *Mullinax v. McNabb–Wadsworth Truck Co.*, 117 F.R.D. 694, 695–96 (N.D.Ga.1987) (Shoob, J.). Examples of reasons justifying the denial of leave to amend a party's pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment . . . ." *Foman*

*v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### A. State Claims of Fraud and Breach of Contract

In his motion to reconsider, plaintiff has further delineated his claims of fraud and breach of contract. However, these claims that plaintiff seeks to add are state law claims. Prior to this order, plaintiff had before the court a federal claim of employment discrimination. However, this order grants the defendants' motion for summary judgment on the employment discrimination claim and leaves no federal claim to which the plaintiff can add his state claims. As the court would not have original jurisdiction over plaintiff's state law claims, in the absence of a federal claim, plaintiff's proposed amendments would be futile. The court hereby DENIES plaintiff's motion to amend his complaint to include the state law claims of fraud and breach of contract.

### B. Taxpayer's Claim for the Recovery of Public Funds

Plaintiff mentions for the first time in the Second Motion for Leave to File an Amended Complaint that he wishes to add a "taxpayer's claim for the recovery of public funds received and spent by Truett–McConnell College in contravention of the Establishment Clause of the First Amendment." Second Motion for Leave to File, p. 1. This new cause of action is not related to Title VII or the termination of plaintiff's employment. Plaintiff cannot continue to assert his claims piecemeal and at the end of the scheduled discovery period.

Permitting plaintiff to untimely amend his complaint to include the taxpayer claims would unduly prejudice defendants. The taxpayer claim is far removed from the claims relating to plaintiff's employment, and the defendants allege that they did not, and had no reason to, pursue a defense of such claim during discovery. The facts that give rise to plaintiff's original claim were that his contract was terminated and that the termination was based on religion. His new taxpayer cause of action has nothing to do with either of these facts. The court will not allow plaintiff to amend his claims well after the discovery period has ended to include

new theories controlled by different and new patterns of evidence which the parties have not developed. Plaintiff's motion to amend his complaint to include a taxpayer's claim for the recovery of public funds is hereby DENIED.

In addition, but unnecessary to this ruling, is the issue of whether the plaintiff has standing to bring this taxpayer claim. Article III of the United States Constitution requires that a party who invokes the court's authority must show that he personally suffered some actual injury from the putatively illegal conduct of the defendant, that the injury is traceable to the challenged action, *and* that the injury is likely to be redressed by a favorable decision. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (plaintiffs who claimed that they were harmed by the fact that the Government gave financial aid to discriminatory private schools did not have standing to bring suit); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (plaintiffs who challenged a Government conveyance of property to a religious institution did not have standing to bring suit). In *Valley Forge College,* the plaintiffs were alleging deprivation of the fair and constitutional use of their tax dollars. However, in *Frothingham v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) and *Doremus v. Board of Education,* 342 U.S. 429, 433–434, 72 S.Ct. 394, 96 L.Ed. 475 (1952), the Supreme Court held that the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer. While the court does not need to rely on the standing issue in denying plaintiff's motion to amend, this issue would have to be addressed before the case could proceed.

### Conclusion

Plaintiff's motion to compel further discovery and impose sanctions on the defendants is DENIED [35–1]. Therefore, plaintiff's motion to extend time to file dispositive motions until after discovery is completed is

DENIED as moot [35–2]. Plaintiff's motion for extension of time to file his motion for summary judgment is hereby DENIED as moot [40–1]. Plaintiff's motion to supplement with errata sheet is GRANTED [45–1], and plaintiff's motion for leave to file is GRANTED [49–1]. Plaintiff's motion for reconsideration of the court's April 7, 1994 order is hereby GRANTED [36–2]. However, plaintiff's motion to amend his complaint is DENIED [36–1].

For the above stated reasons, the court finds that Truett–McConnell College qualifies for the religious exemption found in 42 U.S.C. § 2000e–2(e)(2). Truett–McConnell College is in substantial part supported, controlled and managed by the Georgia Baptist Convention and other Baptist religious organizations. Thus, defendants' motion for summary judgment is hereby GRANTED with respect to the claim of religious discrimination [37–1].