Mrs. Bessie Reppond MURPHY, Administratrix of the Estate of Robert Earl Mohon, et al., Plaintiffs-Appellants,

v.

MAGNOLIA ELECTRIC POWER ASSOCIATION, Defendant-Appellee.

No. 78–2612.

United States Court of Appeals, Fifth Circuit.

March 12, 1981.

---

Robert O. Homes, Jr., Metairie, La., for plaintiffs-appellants.

Daniel, Coker, Horton, Bell & Dukes, Joel W. Howell, III, and Thomas A. Bell, Jackson, Miss., for defendant-appellee.

Before VANCE and GARZA, Circuit Judges and ALLGOOD *, District Judge.

* District Judge of the Northern District of Alabama, sitting by designation.

VANCE, Circuit Judge:

Appellants brought this diversity action in district court charging appellee Magnolia Electric Power Association (MEPA), a Mississippi power utility, with negligently causing the death by electrocution of Robert Earl Mohon. The jury returned a verdict for defendant. We hold that the trial judge committed reversible error in excluding expert testimony and remand for a new trial.

I.

Robert Mohon was electrocuted on Monday, May 13, 1974 in a swampy rural area near Bogue Chitto, Mississippi. His death took place at the site of a temporary repair of a power line break, made by MEPA in response to reports of power outages on Saturday, May 10. The MEPA crews found that a rotten pole had fallen against a tree, causing a break in the power line. Lacking the necessary manpower to erect a new pole, they removed the old pole and spliced the line back together. Because it lacked the support of the additional pole, the power line hung approximately 12 feet above the ground. The line still hung in this position on May 13 when Mohon and three other young men walked into the swampy area, allegedly looking for fishing spots. Two members of the group left Mohon and a friend for a few minutes to investigate a different trail. Upon hearing shouts, they returned and found Mohon and his companion on the ground with electrical burns. Mohon was dead. His companion was unconscious and was later unable to recall how the electrocution occurred.

This circuit in *Gordy v. City of Canton, Mississippi*, 543 F.2d 558, 561 (5th Cir. 1976) summarized Mississippi law with respect to the duty owed by a distributor of electricity as follows:

> The degree of diligence which a distributor of electricity must observe is described as:
>
> 1. A very high degree of care;

2. Everything that gives reasonable promise of preserving life must be done, regardless of difficulty or expense; and

3. The degree of care increases as the danger increases.

The duty is active in nature, and a continuing one. The company may not wait passively until some third person has gone to the trouble to volunteer information of a particular danger at a particular place. The duty applies both to construction and to the subsequent maintenance of the lines.

Indeed, the rule is so stringent that an electric power company does not relieve itself of liability unless and until it has shown that it has exercised the highest degree of care to prevent the danger.

(footnotes omitted).

■ At trial, appellants attempted to prove that MEPA had violated the National Electric Safety Code by allowing the wire to hang 12 feet above the ground. Under Mississippi law, failure to comply with the minimum requirements of the Code constitutes negligence per se. *Mississippi Power Co. v. Luter*, 336 So.2d 753, 756 (Miss. 1971). Although it appears that the minimum heights specified by the Code vary with the location of the power lines, testimony indicated that in the absence of an emergency situation the required minimum height was at least 15 feet.

Appellants produced an electrical engineer to provide expert testimony in support of their case. The trial judge refused to allow the witness to testify, however, because appellants had failed to supplement their interrogatory answers to provide opposing counsel with the expert's name as required under Fed.R.Civ.P. 26(e). Defendants then produced their own expert who testified that the National Electric Safety Code permitted variances in emergency situations. He stated that in his opinion the repairs in question involved an emergency situation and that MEPA's conduct had conformed to the requirements of the Code. Appellants then attempted to call their expert as a rebuttal witness and the trial judge again refused to permit his testimony.

At the close of trial, the judge instructed the jury as to the requirements of the National Electric Safety Code. Appellants had proposed the following jury instruction:

If you believe from a preponderance of the evidence that the defendant's power line was below _____ feet, and that this was the proximate cause of the death of Robert Earl Mohon, then I instruct you to find for the plaintiffs.

The plaintiffs had left a blank space for the judge to insert the number of feet. They had done so because the Code, as noted, prescribes different heights for different areas. After hearing the evidence presented, they intended to ask the judge to insert either 15 feet or 17.5 feet. The judge, however, entered the number 12. When appellants objected the judge explained:

I'll tell you how I arrived at 12 feet. This colored gentleman on the witness stand, I totalled up his height here somewhere and he held that blade up and he said that the line was one foot above the top of his blade. And I totalled that up and it was a little bit less than 12 feet so I put 12 feet in here.

On this appeal, appellants cite several grounds of error including the exclusion of their expert witness' testimony, the giving of the instruction quoted above and numerous remarks made by the trial judge in the presence of the jury.

## II.

■ We agree with appellants that the trial judge erred in refusing to permit their expert witness to testify. We reach this conclusion despite the fact that appellants breached their duty under Fed.R.Civ.P. 26(e) to supplement their answers to appellee's interrogatories. Exclusion of evidence in some instances is an appropriate sanction for such a breach, *see* Advisory Committee Note to Rule 26(e), and the district judge enjoys considerable discretion in determining when it is properly imposed, *see Washington Hospital Center v. Cheeks*, 394 F.2d

964, 965 (D.C. Cir. 1968) (Burger, J.). Among the factors which the court should take into consideration in determining whether to exclude evidence are "the explanation, if any, for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2050 at 327 (1970).

Appellants contend that the trial judge abused his discretion in refusing to permit their expert to testify as part of their case in chief. Appellants' original response to appellee's interrogatories stated that an expert would be retained. Without contradiction, appellants argue that as a result of a parallel suit brought in state court by Mohon's companion, MEPA was well aware of their expert's identity. They point out not only that opposing counsel knew the name of their expert but that they offered to exchange experts' reports approximately 10 days prior to the trial, an offer which appellees declined.

■ While it appears that appellants acted in good faith and that appellees would not have been unfairly surprised by admission of the testimony, we do not decide whether the trial judge erred in refusing to allow appellants' expert to testify as part of their case in chief. We hold instead that it was reversible error on the facts of this case to refuse to allow appellants' expert to testify as a rebuttal witness. No prejudice to appellee would have resulted from allowing him to testify in response to the evidence of appellee's own witness. On the other hand, exclusion of this testimony struck at the heart of appellants' case. In view of the absence of prejudice and the essential nature of the evidence involved, the trial judge abused his discretion in prohibiting the rebuttal testimony.[1] *See DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201–02 (3d Cir. 1978) (error to exclude critical expert testimony when no prejudice to opposing party evident); *Meyers v. Pennypack Woods*, 559 F.2d 894, 904–05 (3d Cir. 1977) (suggesting factors by which to determine whether trial court has abused discretion in excluding testimony). *Cf. Shelak v. White Motor Co.*, 581 F.2d 1155, 1160 (5th Cir. 1978) (trial court did not abuse discretion in permitting testimony of unnamed expert when defendant was not prejudicially surprised).

■ We note also that the trial judge erred in giving the challenged instruction on the requirements of the National Electric Safety Code which apparently was the result of some confusion on his part as to the tenor and effect of the instruction. Further, we note that some of his remarks concerning appellants' counsel[2] were at least inappropriate. Since neither is likely to recur on a new trial it is unnecessary for

1. We note that appellants failed to make an offer of proof indicating the general content of the testimony which they sought to have admitted. Appellees have not directly raised this issue on appeal; however, the subject matter of the testimony was apparent from the context when appellants sought to introduce their expert as a rebuttal witness. *See* Fed.R.Evid. 103(a)(2).

2. Appellants' complaint involves the prejudicial effect of a series of comments in the presence of the jury, representative of which are the following:

These people are from Louisiana .... You wouldn't think that would be a legitimate question, but I had a case reversed on me involving a Louisiana resident because I permitted a lawyer, sort of faciously [sic], halfway in fun, he said something about these people in Louisiana done come over here and get all of our money.

. . . . .

What we're talking about is this case right before me right now. I don't want to know about something over in Louisiana.

. . . . .

You lawyers in Louisiana don't know when to quit talking.

. . . . .

Counsel, I expect lawyers that are allowed to practice in this court to ask questions that relate to the issues in the case.

. . . . .

Anything to waste time. Just drag it out as long as you can counsel.

. . . . .

Just waste all the time you want to. These people haven't got anything to do but listen to you.

us to decide what the effect of either would have been if we had not already determined that reversible error occurred.

REVERSED and REMANDED.