FABRICA ITALIANA LAVORAZIONE
MATERIE ORGANICHE, S. A. S.,
Plaintiff-Appellee,

v.

KAISER ALUMINUM & CHEMICAL
CORPORATION, Defendant,

Kaiser Aluminum & Chemical Sales, Inc.,
Defendant-Appellant.

No. 81–5346.

United States Court of Appeals,
Eleventh Circuit.

Sept. 1, 1982.

---

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Thomas J. Roehn, Eurich Z. Griffin, Tampa, Fla., for defendant-appellant.

John C. Dotterrer, Palm Beach, Fla., for plaintiff-appellee.

Before TUTTLE, KRAVITCH and JOHNSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Kaiser Aluminum appeals from a jury verdict in favor of plaintiff-appellee Fabrica Italiana Lavorazione Materie Organiche, S.A.S. (FILMO) in this diversity action for breach of contract. Kaiser alleges that the trial court erred in striking one of Kaiser's defenses, in failing to construe the contract as a matter of law, in not directing a verdict for Kaiser, and in excluding the testimony of one of Kaiser's expert witnesses. Finding no reversible error, we affirm.

## I. Background

In September 1979, FILMO and Kaiser Aluminum reached an agreement by telephone for Kaiser to sell FILMO 8,000 metric tons of diammonium phosphate (DAP).

The agreed price was $211.70 per ton FOB Tampa, Florida. Subsequently each party sent telexes confirming the sale. On September 10, FILMO sent Kaiser a telex confirming the terms of the agreement and providing "shipment: December 1979—with 12 days preadvice." On September 12 Kaiser responded with a telex that confirmed the basic terms of the agreement and stated "Shipment: December 1979 with min. 15 days notice of named vessel arrival and tonnage declaration. We must have nomination min. 15 days notice as shipment must be made in Dec. 79. Should buyer not nominate vessel with adequate lead time seller reserves right to cancel sale." Five days later, Kaiser telexed FILMO requesting assurance that the DAP would be "moved" during December.[1] FILMO responded that the "material will be moved in December as per contract."

In November, 1979, FILMO nominated a Soviet vessel, the BELOVODSK, to ship the DAP from Tampa. On November 20, FILMO requested that Kaiser "accept the stem" of the BELOVODSK (i.e., approve shipment in the named vessel). Kaiser did so in a telex which also stated "Pls keep us advised any change ETA of this vessel as we must repeat must have vessel loaded prior end Dec. 79." FILMO then found that because of problems in Cuba, the BELOVODSK could not arrive in Tampa before December 31, and nominated a substitute Soviet vessel, the UELEN, to accept shipment. The UELEN was expected to arrive in Tampa on December 29. Because

a ten-day time lag existed between a ship's arrival at the Tampa port and berthing for loading, on December 28, Kaiser informed FILMO that the ship could not be loaded prior to the December 31 deadline, and "cancelled" the contract.[2] FILMO immediately purchased "cover" DAP pursuant to U.C.C. §§ 2–711 and 2–712, F.S.A. §§ 672.-711 and 672.712[3] for loading on the UELEN, but by the time the UELEN reached the loading berth, the International Longshoreman's Association had instituted a boycott of Soviet vessels and refused to load the UELEN. FILMO then obtained a non-Soviet vessel to ship the DAP and sued Kaiser for breach of contract.

## II.

Kaiser first complains that the trial court committed reversible error by striking its eleventh affirmative defense. This defense related to the ILA boycott of Russian ships which prevented the loading of the UELEN. At trial, Kaiser referred to this as an impossibility defense, arguing that it was not liable to FILMO because the boycott prohibited timely performance of Kaiser's obligations to load the DAP. On appeal Kaiser has reformulated its claim into one of proximate cause.[4] Essentially, Kaiser argues that it is not liable for the damages suffered by FILMO because the ILA boycott prohibited shipment of the DAP on the vessel nominated by FILMO, the UELEN. Kaiser asserts that the boycott caused FILMO's damages, not Kaiser's prior breach.[5]

---

1. This telex stated: "Would you please ensure that material is moved during December otherwise order will have to be cancelled, which would be a pity."

2. After cancelling Kaiser resold the DAP ex-warehouse to Cargill, Inc., at a price substantially higher than that in the FILMO contract. FILMO had previously offered to purchase the DAP ex-warehouse so that Kaiser could report the profit on the sale in 1979, but Kaiser rejeced this offer.

3. The parties agree that the substantive law of Florida governs this lawsuit.

4. Kaiser apparently chose this strategy to avoid the application of U.C.C. § 2–614(1), F.S.A. § 672.1–614(1) which states:

Where without fault of either party the agreed berthing, loading, or unloading facilities fail or an agreed type of carrier becomes unavailable or the agreed manner of delivery otherwise becomes commercially impracticable but a commercially reasonable substitute is available, such substitute performance must be tendered and accepted.

Alternate performance was available by shipping the DAP in a non-Soviet vessel, which in fact is what FILMO did.

5. Kaiser asserts in its brief that at the time of the motion to strike the court could not know Kaiser would be found liable for breach. While this assertion is correct, it misses the point. Kaiser's affirmative defense became relevant only if Kaiser was found guilty of breach. The

We find Kaiser's argument novel but unpersuasive. Under Fed.R.Civ.P. 12(f), a court may, upon motion of the opposing party, strike "from any pleading any insufficient defense . . . ." The question before us, therefore, is whether as a matter of law the defense asserted by Kaiser was insufficient. *See Massey Fergusen, Inc. v. Bent Equipment Co.*, 283 F.2d 12, 14 (5th Cir. 1960); *Meinrath v. Singer Co.*, 87 F.R.D. 422, 429 (S.D.N.Y.1980).

■ We conclude that in the context of this case Kaiser's defense was legally insufficient. U.C.C. § 2–610, F.S.A. § 672.610, states that after a party repudiates the contract, the aggrieved party may suspend his own performance and resort to any remedy for breach. One of these remedies is "cover": the aggrieved party immediately may purchase substitute goods and recover as damages the difference between the cost of cover and the contract price of the goods plus any incidental or consequential damages. U.C.C. § 2–712, F.S.A. § 672.712. These statutory rules vitiate any theory that the subsequent ILA boycott somehow relieved Kaiser of the responsibility for breach. At the moment of breach, FILMO was entitled to suspend performance of the contract and cover. This is exactly what it did; at that moment (prior to the boycott) FILMO's damages for covering were fixed, and only these damages were sought by FILMO in this suit. FILMO's cover unquestionably was the result of Kaiser's anticipatory repudiation; Kaiser, in fact, does not argue otherwise. The damages arising from that cover, therefore, were also the proximate result of Kaiser's breach, and the subsequent ILA boycott was legally irrelevant to those damages.[6]

The cases cited by Kaiser to support its argument are inapposite. In *Manganaro Bros., Inc. v. Gevyn Construction Corp.*, 610 F.2d 23 (1st Cir. 1979), for example, the subcontractor sued the general contractor for future profits on a contract which was terminated by the general contractor after the owner had terminated the principal contract. The subcontract contained a clause permitting the general contractor to terminate the subcontract "In the event that the Owner terminates or cancels the Principal Contract for any cause whatsoever . . . ." The district court had held that the general contractor could not rely on the termination clause because of a prior breach of the subcontract. The First Circuit reversed, noting that the cancellation of the principal contract was the operative cause of the cancellation of the subcontract, not the prior breach. The subcontractor, in fact, had not sued on the basis of the prior breach. Accordingly, the court held that the general contractor was not liable for damages for exercising the termination clause.

Although the opinion closed with the statement that "Supervening impossibility of performance not occasioned by the defendant puts an end to recovery, regardless of defendant's prior breach," the case did not involve impossibility but rather whether the general contractor had committed breach by terminating the contract. The case before us, moreover, does not address whether subsequent impossibility might limit recovery for damages caused by that impossibility.[7] Here Kaiser's cancellation, not the subsequent ILA boycott, caused FILMO to cover; consequently the boycott

---

legal issue raised by the motion to strike, therefore, was whether assuming Kaiser was guilty of breach, the eleventh affirmative defense was legally relevant under any proof that might arise at trial.

**6.** This result is consistent with both the language and purpose of the U.C.C. Permitting Kaiser to defend its anticipatory breach by the subsequent actions of the ILA would run contrary to U.C.C. § 2–610's direction that after an anticipatory repudiation, the aggrieved party "may resort to any remedy for breach" and need not wait until performance was due under

the contract. Kaiser's interpretation, moreover, would go far toward destroying the certainty in commercial transactions this section was designed to achieve by permitting the aggrieved party to immediately exercise his rights on breach.

**7.** Had FILMO sought compensatory damages for a delay in shipment resulting from the ILA boycott rather than for cover, for example, Kaiser's "impossibility" defense might well have been relevant.

had nothing to do with the damages arising from the cover. Accordingly, we hold that the district court did not err in striking Kaiser's eleventh affirmative defense.

## III.

Kaiser also complains that the trial court erred by submitting to the jury the issues of whether a contract existed between Kaiser and FILMO and if so its exact terms. Kaiser asserts that the contract was unambiguous and should have been construed by the trial court as a matter of law. Kaiser further contends that after construing the contract, the court should have directed a verdict in its favor.

■ We disagree. The primary dispute between FILMO and Kaiser was whether the shipment term meant that FILMO had to provide a vessel *at the port* by December 31 or whether it had to provide a vessel which *could be loaded* by December 31. Although the interpretation of a contract is for the court when the contract is unambiguous, *see General Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311, 313 (5th Cir. 1978); *Smith v. State Farm Mutual Automobile Ins. Co.*, 231 So.2d 193, 194 (Fla.1970), when a contract term is reasonably susceptible of more than one interpretation, it is ambiguous and the resolution of its meaning is for the jury. *Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1234 (5th Cir. 1973), *cert. denied*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *Hoffman v. Terry*, 397 So.2d 1184 (Fla.App.1981). FILMO was entitled under U.C.C. § 2–208, F.S.A. § 672.208, to introduce evidence of usage of trade to explain the precise meaning of the "shipment" term. Kaiser vigorously contested FILMO's position that "shipment" required only having a ship at port and not having it loaded. The "shipment" term, therefore, was reasonably susceptible of two interpretations, and the trial court did not err in submitting the issue to the jury. Having properly submitted the issue of the contract's meaning to the jury, the court *a fortiori* properly denied Kaiser's motion for a directed verdict.

## IV.

Kaiser's final claims relate to two evidentiary matters. Kaiser first asserts that the trial court abused its discretion in not permitting an expert witness who was not disclosed on the pretrial witness list to testify at trial. Kaiser claims it was severely prejudiced by the exclusion of this witness and that FILMO was not prejudiced by the failure to disclose the witness prior to trial; hence the trial court should have permitted the expert to testify.

■ Whether to exclude a witness not listed in the pretrial witness list is discretionary with the trial court, and the decision is reviewable only for abuse. *Newman v. A. E. Staley Manufacturing Co.*, 648 F.2d 330, 333 (5th Cir. 1981); *Keyes v. Lauga*, 635 F.2d 330, 335 (5th Cir. 1981). *See Murphy v. Magnolia Electric Power Association*, 639 F.2d 232, 234–35 (5th Cir. 1981) (exclusion of witness for failure to update interrogatories). In *Murphy* the court indicated that in judging whether the exclusion of a witness was an abuse of discretion, an appellate court should consider the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party. *Id.* at 235.

■ Applying these factors to the case before us, we conclude that no abuse of discretion occurred. Although the witness, Michael vanGelder, would have testified on the admittedly crucial issue of the commercial meaning of the contract's "shipment" term, Kaiser did present the testimony of two witnesses on this issue. More important, however, is the apparent lack of good faith by Kaiser in producing this witness and the absence of any credible explanation for not making prior disclosure. In the pretrial witness list filed by the parties on January 23, 1981, Kaiser listed a Jack Berg as an expert witness, but not vanGelder. Prior to this time Kaiser had failed to indicate in its answers to FILMO's interrogatories that it intended to call any experts, and Berg was disclosed only after discovery had ended. On January 26, the court ordered

the parties to file an updated list of witnesses who would actually be used at trial. Kaiser's list included neither Berg nor vanGelder, but did provide generally for a "rebuttal expert." Trial began on March 10, 1981, and despite the fact that vanGelder was in Tampa prepared to testify on March 11, Kaiser did not mention the existence of vanGelder until the end of trial on March 12. Kaiser apparently was counting on qualifying vanGelder as the "rebuttal witness" on its pretrial list. The trial court, however, ruled that vanGelder was not a rebuttal witness.[8] Kaiser then asserted that vanGelder was a substitute for Berg, but offered no explanation for Berg's absence beyond the assertion that Berg could not be at trial and that it felt vanGelder would make a better rebuttal expert. Finally, although a continuance could have afforded FILMO the necessary opportunity to investigate vanGelder's credentials and knowledge of Tampa port practices, a continuance at mid-trial would have been disruptive. Accordingly, the trial court did not err in excluding the witness.

■ Kaiser's final complaint is that the trial court erred in permitting FILMO to introduce evidence of the load capacity of the UELEN while prohibiting Kaiser from showing why the UELEN was not loaded. The load capacity of the UELEN, however, was highly relevant to FILMO's damages. FILMO sought damages for 8400 metric tons of cover pursuant to a provision in the contract that permitted FILMO to request an additional 5% of the contract amount; the evidence of the load capacity of the UELEN was essential to show that FILMO was entitled to invoke the 5% option under the contract and hence was entitled to damages for the 8400 metric tons of DAP actually purchased and delivered. In contrast, as we have held above, the reasons why the UELEN was not loaded were irrelevant to this lawsuit. Questions of relevancy of evidence are discretionary with the trial court, *United States v. Dothard*, 666 F.2d 498, 501 (11th Cir. 1982), and we find no abuse here.

AFFIRMED.

8. Kaiser has not challenged this ruling on appeal.