[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
1/20/99
THOMAS K. KAHN
CLERK

No. 96-9235

D. C. Docket No. 94-cv-70 (JRE)

ROBERT MANUEL ROGERS, by his natural parent
and next friend, Patricia Anne Lackey,

Plaintiff-Appellant,

versus

MUSCOGEE COUNTY SCHOOL DISTRICT;
HERMAN LARRY CARR,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

(January 20, 1999)

Before TJOFLAT, BIRCH and MARCUS, Circuit Judges.

TJOFLAT, Circuit Judge:

Thirteen-year-old Robbie Rogers was sexually molested at school by his music teacher. Robbie then brought this suit against the Muscogee County School District ("Muscogee"), alleging that Muscogee was vicariously liable for this abuse under Title IX of the Education Amendments of 1972, Pub. L. No. 92-318, 86 Stat. 235, 373 (1972) (codified as amended at 20 U.S.C. § 1681 (1994)) ("Title IX") and under 42 U.S.C. § 1983.[1] The jury returned a verdict in favor of Muscogee. Robbie and his mother appeal, claiming that the district court erred by: (1) denying their motion to compel discovery of certain student records before trial, (2) barring certain testimony of other witnesses at trial, and (3) improperly excluding a last-minute witness who was not listed in the pretrial order. We affirm the district court's judgment for the reasons set forth below.

I.

A.

In 1993, Robbie was a student at Richards Middle School, where he attended a boys chorus class taught by Herman Larry Carr. Carr had been teaching at the school since 1982, and he was both well-respected by other teachers and well-liked by the students. Carr and Robbie shared a particularly strong rapport; Carr had shown special interest in Robbie's music instruction, and Robbie thought of Carr as his "idol." Consequently, when Carr asked Robbie to come to school on a student vacation day, March 12, 1993, to assist with some work, Robbie readily agreed.

While the two were alone in Carr's office on March 12, Carr molested Robbie; he pulled

---

[1] Patricia Lackey, Robbie's mother and next friend, filed this suit on Robbie's behalf.

Robbie down onto his knee and held Robbie against his chest. Carr then touched Robbie's groin with his hand, and moved Robbie's hand onto Carr's own groin. Moments later there was a noise in the adjoining room, and Carr threw Robbie off his lap.

Robbie did not immediately tell anyone about the incident. Around Friday, April 23, however, he told both his girlfriend and Mrs. Becker, the mother of another friend, about the attack.[2] Then on Monday, April 26, accompanied by his girlfriend, Robbie explained to the school counselor what Carr had done. The school counselor immediately reported the incident to the principal, William Arrington. The next morning, Arrington confronted Carr with Robbie's claim and when Carr did not deny the charges, Arrington suspended him from teaching classes. Later that same day, Carr directly admitted to the Muscogee superintendent that he had molested Robbie. The superintendent gave Carr the option of resigning or facing termination, and on May 4 Carr tendered his resignation.

Meanwhile, the word had spread around the school that Robbie was responsible for Carr's suspension. Some students speculated about what had happened, and frequently told Robbie that they believed he was lying. Arrington did not inform the students or their parents that Carr had confessed to the attack.

Carr was arrested for child molestation on May 19. The arrest, including the fact that Robbie was Carr's accuser, received considerable media attention. On May 20, Robbie left the school, and on May 29, he and his mother moved from Georgia to Alabama.

B.

---

[2] There is no evidence in the record that Mrs. Becker informed anyone of Carr's misconduct.

Appellants filed this suit on July 17, 1994.  The complaint alleged that Carr's sexual harassment interfered with Robbie's school activities and was sufficiently severe and pervasive to constitute a hostile school environment in violation of Title IX.[3]  The complaint asserted that Muscogee was liable under Title IX because it knew or should have known that Carr had molested boys in the past, and therefore constituted a danger to the children entrusted to his care.[4]  Despite knowledge of Carr's proclivity to molest boys, the complaint asserted, Muscogee failed to take action to protect Robbie.

The complaint also alleged that Carr's sexual contact violated Robbie's "constitutional right to be free from intrusion into his body and the right to be free from the infliction of unnecessary pain."  Because Carr engaged in this sexual contact while acting under color of state law, Muscogee was liable under 42 U.S.C. § 1983.[5]

In defense to appellants' claims, Muscogee responded that it did not know, and could not reasonably have known, that Carr posed a danger to children.  Consequently, it was not liable for Carr's misconduct.

In order to prove that Muscogee had prior knowledge of Carr's propensity to molest

---

[3] Title IX states:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). There is no dispute that Muscogee was a recipient of federal funds when Carr's misconduct occurred, and was therefore subject to Title IX.

[4] Although Carr was originally named as a defendant along with Muscogee, appellants settled their claim against Carr after the first day of trial.

[5] 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

children, appellants decided to contact each of Carr's former students and ask whether Carr had molested them. To accomplish this goal, appellants served on Muscogee a set of discovery requests, including the following interrogatories:

> 2. Identify by title each document, including, but not limited to, class rolls, which lists the names of students who were enrolled in each class [taught by Carr]. State the location of each such document, each form in which it exists (i.e, paper record, computer file, etc.), and the name of its custodian.

> 3. Identify by title each document, including, but not limited to, student directories, containing "directory information" such as name, address, and/or phone number, which lists the names of students who were enrolled in each class [taught by Carr]. State the location of each such document, each form in which it exists (i.e., paper record, computer file, etc.), and the name of its custodian.

Appellants also served on Muscogee a request to produce all documents identified in response to these two interrogatories.

Muscogee responded to Interrogatory 2 and the corresponding request for document production by identifying and producing grade books that listed the name of each student taught by Carr. In response to Interrogatory 3 and its corresponding document request, however, Muscogee objected that the discovery request was "overly broad, burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence." Subject to that objection, Muscogee identified rolodex cards for each student taught by Carr between 1988 and 1993. Muscogee refused, however, to produce the rolodex cards.[6] Appellants moved the district court to compel production of the cards but the court denied the motion, concluding that the discovery request was "overly broad."

The case went to trial before a jury on September 23, 1996. On the second day of trial, in

---

[6] Muscogee refused to produce the rolodex cards even after Robbie's counsel offered to hire a copy service to photocopy the cards, or alternatively, to pay Muscogee to make the photocopies.

the absence of the jury, appellants proffered the testimony of several students and parents that they had publicly supported Carr after he resigned, and that they had believed that Robbie was lying about the molestation. Appellants argued that this testimony bolstered their claim that Muscogee's failure to announce that Carr had admitted to the molestation "poisoned [the] community atmosphere" against Robbie because it "allowed this belief to fester in the community that Mr. Carr was innocent . . . ." According to appellants, this poisoned community atmosphere was one element of the hostile school environment that was caused by Carr's abuse and that drove Robbie out of Richards Middle School and eventually out of Georgia. The district court excluded appellants' proffer as irrelevant.

On the third day of trial, after appellants had rested their case and Muscogee had presented most of its defense – four of its six witnesses (including Arrington) – appellants moved the court for leave to reopen their case in order to call a witness whom they had not listed in the pretrial order. This witness, Daniel Lance Jordan, had appeared at the courthouse that morning, after hearing about the case in the media. Jordan had been a student in Carr's class in 1984, and, according to Jordan, had been molested by Carr approximately fifty times. Jordan claimed that he repeatedly told Arrington about this sexual abuse.

Muscogee opposed appellants' motion, arguing that allowing Jordan to testify without first giving it an opportunity to depose him and conduct whatever investigation might be required to rebut his testimony would be highly prejudicial. The district court agreed, and therefore denied appellant's motion.

After Muscogee rested its case, appellants attempted to call Jordan to the stand to rebut Arrington's testimony. Arrington had testified (during Muscogee's case) that he "[a]bsolutely [did] not" have prior notice that "Carr had previously engaged in any behavior similar to what

Robbie was saying was done . . . ." Muscogee objected, reiterating the argument it made in opposition to appellants' motion for leave to reopen their case. The court sustained their objection.

Appellants presented no rebuttal, and the evidence was closed. Following counsels' summations and the court's instructions, the jury returned a verdict for Muscogee.

C.

Appellants raise three claims on appeal. First, appellants contend that the district court abused its discretion by denying their motion to compel production of the student rolodex cards. According to appellants, identifying other victims was crucial in order to prove that Muscogee had prior notice of Carr's propensity to molest children. Second, appellants contend that the court improperly barred students and parents from testifying that they had believed Robbie was lying. Appellants argue that this testimony was relevant to show that Carr's abuse created a hostile school environment. Third, appellants contend that the court abused its discretion when it barred Jordan from testifying. According to appellants, the court should have allowed Jordan to testify because his testimony was particularly important, and because appellants could not have discovered his identity before he arrived at the courthouse.

II.

Appellants first challenge the court's denial of their motion to compel production of the student rolodex cards. Appellants had requested that Muscogee produce student directories and

other documents containing the addresses and phone numbers of Carr's former students.[7] Although Muscogee had identified student rolodex cards in response to this document request, the court upheld Muscogee's objection to this request as being overly broad. We review a court's refusal to compel discovery under an abuse of discretion standard. See Borden, Inc. v. Florida E. Coast Ry. Co., 772 F.2d 750, 756-57 (11th Cir. 1985). We find no such abuse here.

Appellants argue that they were required to prove that Muscogee knew or should have known that Carr posed a danger to his students in order for their claim against Muscogee to succeed. Consequently, it was vital for appellants to find other students who were molested by Carr and ask whether they had reported Carr's sexual abuse to Muscogee officials. Because student directories that listed the address and phone number of former students would have helped appellants find these potential witnesses, appellants contend that the document request for student directories was reasonably calculated to lead to admissible evidence.

Furthermore, appellants assert that they needed student directories (such as the rolodex cards) to find Carr's former students. Although Muscogee produced grade books that included the names of Carr's students, appellants argue that they could not locate most of Carr's former students using these grade books alone. The grade books listed students by the names that they used when they attended Richards Middle School. Many of those students, however, used different names by the time the case went to trial.[8] Consequently, appellants argue, they successfully contacted only ten percent of Carr's former students based on the names listed in the grade books.

---

[7] Appellants did not seek the students' current addresses and phone numbers, only the addresses and phone numbers existing at the time of the students' enrollment in Carr's class.

[8] For example, Daniel Lance Jordan was listed merely as "Lance Jordan" in the grade books.

We conclude, however, that the district court did not abuse its discretion by refusing to compel production of the student rolodex cards, because the requested discovery was overly broad. Appellants' purpose in requesting this discovery was to learn the identity of students who had complained to Muscogee that Carr sexually abused them. Although appellants requested the addresses and phone numbers of hundreds of students in order to gain this information, there was a much narrower and less burdensome manner of discovery available: appellants could have asked, by interrogatory, for the names (as well as the addresses and phone numbers) of all students who complained that Carr sexually abused them. Only if Muscogee balked at this request would appellants have been justified in requesting student directory information for all of Carr's former students. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1034 (9th Cir. 1991) (concluding that district court did not abuse discretion by denying appellants' request for all of defendant's confidential personnel files, because "focused discovery could have been employed" in order to discover the relevant information).

Furthermore, we note that appellants never informed the district court that they were able to locate only ten percent of Carr's former students using the grade books. In their motion to compel discovery of the rolodex cards, appellants argued that the rolodex cards were discoverable because they would lead to admissible evidence, but they did not argue that the cards were necessary to find that evidence. We cannot assume that the district court would have turned a deaf ear to that argument, had appellants presented it to the court. Consequently, we affirm the district court's denial of appellants' motion to compel discovery of the student rolodex cards.

III.

Second, appellants claim that the district court abused its discretion by excluding as irrelevant the proffered testimony of students and parents who had publicly supported Carr after he resigned.[9] These students and parents had written letters to law enforcement agencies, the grand jury (while considering whether to indict Carr for child molestation), and prosecutors, among others, stating that they believed Robbie was lying about the molestation. Although the students and parents had written these letters after Robbie left Richards Middle School, this testimony was relevant, appellants argue, because their opinion of Carr's guilt was "telling of the attitude which existed while Robbie was there that forced Robbie to leave school." The proffered testimony therefore supported the claim that Muscogee's failure to announce that Carr had confessed "poisoned [the] community atmosphere" against Robbie. According to appellants, this atmosphere was part of the hostile environment that was caused by Carr's abuse.

We find no merit in appellants' assertion that exclusion of this testimony constituted such an abuse. We assume arguendo that Muscogee could be held liable for creating a hostile environment based on the abusive comments of students and parents that were actually conveyed to Robbie while he attended Richards. Appellants, however, did not contend that these students and parents conveyed their opinions to Robbie, or that they voiced their opinions before he left Richards. Rather, whatever they had to say in letters to the grand jury, prosecutors, or law enforcement officers was said after Robbie left the school. Their comments, therefore, could not have created a hostile school environment. Consequently, the proffered opinions of parents and

---

[9] Abuse of discretion is the proper standard when reviewing a district court's decision to exclude evidence as irrelevant under Federal Rule of Evidence 401. See United States v. Tapia, 59 F.3d 1137, 1142 (11th Cir. 1995). Federal Rule of Evidence 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

students were wholly irrelevant, and were rightly excluded by the district court.[10]

## IV.

Third, appellants claim that the district court improperly barred Daniel Lance Jordan from testifying. A district court's decision to exclude a witness not listed on the pretrial order is reviewable only for abuse of discretion. See Fabrica Italiana Lavorazione Materie Organiche S.A.S. v. Kaiser Aluminum & Chem. Corp., 684 F.2d 776, 780 (11th Cir. 1982). We have previously stated that an appellate court that is reviewing the decision to exclude a witness should consider: (1) the importance of the testimony, (2) the reason for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify. See id.

Appellants assert that the court should have allowed Jordan to testify because his testimony was of crucial importance. If Jordan was allowed to testify, he would have stated that Carr molested him approximately fifty times, and that he repeatedly told Arrington about the abuse. Consequently, Jordan's testimony would have refuted Muscogee's assertion that its officials did not have prior notice of Carr's propensity to molest children. Appellants argue that the importance of Jordan's testimony outweighed any prejudice that would have resulted to Muscogee because Jordan was not listed on the pretrial order.

Furthermore, appellants contend that Jordan should not have been excluded because

---

[10] We also note that Robbie himself spread the word that he was responsible for Carr's resignation. The record indicates that Robbie told at least three other people besides the school guidance counselor what Carr had done. Robbie told his girlfriend and brought her with him to see the school counselor; Robbie told Mrs. Becker (the mother of another friend); and Robbie announced to another teacher at the school that Carr was leaving the school because he had accused him of sexual abuse. Consequently, Robbie could hardly argue that Muscogee should be held liable for failing to quell rumors that he helped create.

appellants had a good excuse for failing to discover his identity before he appeared on the third day of trial: at the time of trial, Jordan went by a different name from that which he used as a student at Richards Middle School. Although Jordan used his middle name while attending Richards, and his name thus appeared in the grade books as "Lance Jordan," at the time of the trial he instead was using his first name "Daniel." Consequently, appellants failed to locate Jordan from the grade books produced by Muscogee.[11]

We conclude, however, that the court did not abuse its discretion in excluding Jordan's testimony. It would have been extremely prejudicial to Muscogee to allow Jordan to testify. If Muscogee had received notice before the trial that Jordan would testify, Muscogee could have structured its defense to counter what Jordan had to say. By the time Jordan was discovered, however, Muscogee had already presented most of its defense to the jury. Had Jordan been allowed to testify in the middle of Muscogee's presentation of its case, it would have disrupted the flow of Muscogee's defense, and forced Muscogee to scramble at the last minute to counter his testimony.

Appellants had several options available that would have minimized the prejudice to Muscogee. First, after appellants discovered Jordan they could have requested that the court grant a continuance. This option would have allowed Muscogee the opportunity to depose Jordan, investigate Jordan's story, prepare cross-examination, and find witnesses to rebut his testimony. A continuance, in short, would have provided Muscogee the opportunity to counter Jordan's testimony in some meaningful way. Second, appellants could have requested a mistrial.

---

[11] Appellants would not have discovered Jordan earlier even if Muscogee had produced the student rolodex cards as appellants requested. The rolodex cards only included the addresses and phone numbers of students who attended the school after 1988. Jordan, however, was a student in Carr's class in 1984.

This option would have allowed both parties to investigate Jordan's claims and reargue their case from the beginning, taking Jordan's testimony into account.

Appellants, however, eschewed both of these less prejudicial alternatives. Instead, they presented the judge with a narrow choice: allow Jordan to testify immediately – and thus deny Muscogee the opportunity to depose him and prepare cross-examination – or exclude his testimony entirely.[12] In light of the extreme prejudice to Muscogee if Jordan were allowed to testify, as well as appellants' failure to move for a continuance or request a mistrial in an effort to ameliorate the prejudice to Muscogee, we conclude that the district court did not abuse its discretion in barring Jordan's testimony.[13]

V.

For the forgoing reasons, the district court's judgment is AFFIRMED.

---

[12] Because it was appellants who sought Jordan's testimony, the obligation to request a continuance or a mistrial fell on appellants, not Muscogee.

[13] Appellants also present a fourth challenge to the district court's judgment: that the court improperly instructed the jury that Muscogee was liable for Carr's sexual misconduct only if Muscogee "knew or should have known" of Carr's propensity to molest children. Appellants contend that the jury should instead have been instructed that Muscogee was strictly liable for Carr's abuse. The United States Supreme Court has recently addressed this issue and concluded that a school district is liable under Title IX for the sexual harassment of a student by a teacher only if the school district actually knew, and was deliberately indifferent to, the teacher's abuse. See Gebser v. Lago Vista Indep. Sch. Dist., – U.S. –, 118 S. Ct. 1989, 1993, 141 L. Ed. 2d 277 (1998). Consequently, although the district court incorrectly instructed the jury regarding Muscogee's standard of liability, the instruction given by the court was more favorable to appellants than the correct instruction would have been.