[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11101

Non-Argument Calendar

————————————————

JOYCE THOMAS,

Plaintiff-Appellant,

*versus*

ATLANTA PUBLIC SCHOOLS,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-04581-MHC

————————————————

Before Branch, Brasher, and Abudu, Circuit Judges.

PER CURIAM:

Joyce Thomas appeals the district court's order granting summary judgment for Atlanta Public Schools ("APS") on her Age Discrimination in Employment Act ("ADEA") claims. On appeal, Thomas argues that the district court abused its discretion when it relied on the improper affidavits of Pamela Hall, Nicole Lawson, and Dr. Timothy Gadson and refused to consider the affidavits of Nyantakyi Appiah and Derrick Mosley. Next, she argues that the district court abused its discretion when it denied her request to compel APS to produce evidence that it had notice of her EEOC charges. Lastly, she argues that the district court erred when it granted APS's motion for summary judgment because she produced sufficient direct and circumstantial evidence to support her ADEA claims.

## I.    Background

Thomas worked in various capacities in several schools within APS between 1996 and 2016. Thomas began her role as assistant principal of Crim High School ("Crim") in July 2014. She worked alongside two other assistant principals, Robin Anderson-Davis and Carter Coleman. During the relevant period, Hall was Chief Human Resources Officer of APS, Gadson was Associate Superintendent, and Dawn Parker was the principal at Crim.

*A. Thomas's Assistant Principal Position is Abolished*

On March 1, 2016, Hall wrote a memo informing all APS principals that certain positions would need to be abolished to deal with budgetary constraints. In total, 396.7 school-based positions were recommended for abolishment. In evaluating which positions to abolish, the memo instructed principals to follow certain criteria. As relevant here, the memo instructed principals that, where there was more than one employee with the same job position at a school, the principal should evaluate which of those positions to remove based on performance.

After evaluating the three assistant principals at Crim—Anderson-Davis, Coleman, and Thomas—Parker determined that Thomas's position would be abolished. Thomas was the only assistant principal of the three that had exhibited performance concerns resulting in a "letter of concern, letter of direction, or professional development plan (PDP) during the 2015-2016 school year, until March 17, 2016." Specifically, on January 27, 2016, Parker gave Thomas a letter of warning identifying Thomas's deficiencies with respect to "Instructional Leadership," "Organizational Management," "Teacher/Staff Evaluation," and "Communication."

Thus, on March 3, 2016, after receiving approval from Gadson, Parker informed Thomas that her position was proposed for abolishment based on a realignment of resources. And on May 6, 2016, Parker notified Thomas that the Superintendent was not recommending the renewal of her employment contract. Thomas

was fifty-eight years old at the time.  Anderson-Davis and Coleman—the two remaining assistant principals at Crim—were fifty-two years old and sixty-one years old, respectively.

### B. *Age-Related Comments and EEOC Charges*

Thomas claims that her colleague, Dr. Clara Nosegbe-Okoka, and other APS employees made unwelcome remarks about her age, which prompted her to file three EEOC charges.  For example, Thomas testified that, beginning in December 2014, Okoka repeatedly made age-related jokes such as "I know you must be 70 years old," "you cannot be younger than that," and "you're too old to be here."  Okoka also questioned how Thomas could be an assistant principal and Okoka not be, when Okoka was younger and had a Ph.D.  Thomas also testified that, on March 7, 2016, a "Ms. Brown" asked her how old she was in a meeting in front of Parker, but Parker did not intervene.

Thomas filed an EEOC charge of discrimination in February 2016, but APS has no record of receiving the charge any time before her position was recommended for abolishment on March 3, 2016.  While Thomas testified that Parker was aware of the alleged harassment, Thomas was not sure whether Parker received notice of the EEOC charge before recommending her position be abolished.  And Gadson did not know about the EEOC charge or

23-11101                Opinion of the Court                5

the comments until after Thomas's position was recommended for abolishment.[1]

On March 14, 2016, Thomas met with Parker and Gadson to discuss the alleged harassment. In Gadson's affidavit discussing the meeting, Gadson asserted that he "advise[d] Plaintiff that I did want her to be deterred, advised her of the APS complaint process and told her that she should file a complaint with APS Employee Relations if she wanted her concerns to be investigated further."[2]

Ultimately, while the decisionmakers in abolishing Thomas's position may have known about the alleged harassment, it is undisputed that none of the decisionmakers themselves made any disparaging comments. Thomas testified that she had complained to Parker about Okoka's comments in the past, but that Parker never made any comments to her about her age. Similarly, Thomas testified that she had discussed her concerns with age discrimination to Hall in the past, but that Hall never made any comments to her about her age. Finally, Thomas

---

[1] Thomas was clear in her deposition testimony that she complained in her first meeting with Gadson about both Okoka's remarks and Brown's inquiry, and she attests in her affidavit that Brown asked her about her age on March 7, 2016. Therefore, there is no dispute of fact that Thomas's initial March meeting with Gadson occurred after March 7, 2016, four days after her position was recommended for abolishment.

[2] APS filed an exhibit documenting an email exchange between APS's counsel and Gadson, in which Gadson confirmed that the affidavit contains a typo and should read that he "advise[d] Plaintiff that [he] did *not* want her to be deterred. . . ."

testified that neither Gadson nor Anderson-Davis ever made any age-related comments to her.

### C. Post-Abolishment

After APS abolished Thomas's position, Thomas applied for other open assistant principal positions. While Thomas received at least one interview, she was not hired. Thomas also testified that, in September 2016, Hall told her that "no one is going to hire you" and "no one is going to give you a job." But Hall did not connect that statement to anything about Thomas's age or EEOC charges. Shortly after Thomas's position was abolished, Okoka was promoted to one of the two remaining assistant principal spots at Crim.

### D. Procedural History

Thomas filed a counseled complaint against APS, asserting claims of age discrimination through disparate treatment under the ADEA ("Count 1"), and hostile work environment and retaliatory discharge under the ADEA ("Count 2"). For Count 1, Thomas alleged disparate-treatment age discrimination based on (1) the comments she received due to her age, which APS's management personnel were aware of; and (2) her qualification for her position and replacement with a younger, less-experienced employee. For Count 2, she alleged hostile work environment and retaliatory discharge because she was harassed on the basis of her age and

because she was terminated and not rehired in retaliation for her EEOC charges.[3]

APS then filed a motion to dismiss, which the court granted as to all claims except for Count 1 and the retaliatory-discharge claim in Count 2.  APS's initial disclosures identified Hall and Nicole Lawson, the executive director of staffing at APS, as potential witnesses.  Thomas's initial disclosures included Gadson and Hall among her possible witnesses.  In a supplemental disclosure filed after the close of discovery, APS also identified Gadson as a possible witness.

APS then moved for summary judgment.  Along with arguing that her claims were meritorious, Thomas's response objected to APS's reliance on the affidavits of Hall, Lawson, and Gadson, asserting that any representations about APS's district-wide abolishment plan were more suited for expert witnesses.  She also objected that APS was withholding documents from her and requested that APS be compelled to produce a complete privilege log.  Thomas also attached the affidavits of Nyantakyi Appiah, a former teacher at Crim; Derrick Mosley, a former counselor at Crim; and Sheila Watkins, a former secretary at Coan Middle School.  APS objected to these affidavits because Thomas had not included these witnesses in her initial disclosures.

The magistrate judge issued a report and recommendation

---

[3] Thomas's complaint also alleged a third count—a violation of the Georgia Fair Employment Practices Act—that was dismissed and is not at issue in this appeal.

("R&R") recommending that APS's motion be granted and that the action be dismissed with prejudice. First, the R&R addressed the discovery issues raised by Thomas and APS. It recommended that Thomas's request for the court to compel APS to produce documents that she contended were being withheld from her should be denied because she offered no specifics as to what those documents were and the period for discovery had closed. Next, it overruled Thomas's objections to the affidavits of Gadson, Hall, and Lawson because, contrary to her arguments, they did not include expert testimony. It then sustained APS's objections to the affidavits of Appiah and Mosley because Thomas failed to identify either of them in her initial disclosures. It also agreed with APS that Watkins's affidavit did not influence the case, but overruled APS's objection to Thomas's affidavit.

Moving on to the substance of the motion, the magistrate judge concluded that Thomas failed to show direct evidence of age discrimination because none of the individuals whom she claimed made comments about her age participated in any decision that constituted an adverse employment action. Next, it found that Thomas could not establish a prima facie case of age discrimination because there was no evidence that Anderson-Davis or Okoka actually replaced her by taking up the duties and responsibilities she had while she was an assistant principal at Crim. It also concluded that the retention of Anderson-Davis was not evidence of discriminatory intent because there was no evidence that Anderson-Davis was less qualified than Thomas, and Coleman was retained even though he was older than Thomas. It added that

Thomas failed to provide statistical evidence showing that APS had a pattern or practice that disparately impacted her on the basis of her age, noting that her conclusory statements expressing that APS had terminated many older workers could not support a prima facie case. It also found that (1) Thomas failed to show that any of her comparators were similarly situated to her because they either worked in different roles than she did or, with Anderson-Davis, did not have comparable performance deficiencies; (2) comments by non-decisionmakers regarding her age were not evidence of discriminatory intent; (3) APS's failure to stop such comments was not evidence of disparate treatment; and (4) there was no other evidence that APS had the intent to discriminate against her on the basis of her age.

As for the retaliatory-discharge claim, the magistrate judge concluded that there was no direct evidence of retaliation. First, Gadson's affidavit stating that he wanted to deter Thomas from making an age-discrimination complaint was a typographical error, given that the rest of the affidavit made it clear that Gadson did *not* want to deter Thomas from making a complaint;[4] and even if it were not a typographical error, it did not directly establish a connection between Thomas's firing and her complaints. Second, Hall's statement that "no one is going to give you a job" also was

---

[4] For example, in the same sentence that Gadson stated that he wanted Thomas to be deterred, Gadson stated that he "told [Thomas] that she should file a complaint with APS Employee Relations if she wanted her concerns to be investigated further."

not direct evidence of retaliation because it did not expressly mention Thomas's protected conduct or her age. Additionally, the magistrate judge found that Thomas did not show that there was a causal connection between her EEOC charges and the abolishment of her position, noting that the evidence suggested that Thomas did not complain of age discrimination to Parker or Gadson before their decision to abolish her position, nor were they aware of the EEOC charges. It also stated that Thomas failed to present evidence that any individual involved in the decision not to hire her for later positions was aware of her protected activity or decided not to hire her because of that activity.

The district court overruled Thomas's objections and adopted the R&R. Thomas then filed two motions for reconsideration, both of which the court denied. Thomas appealed.

## II.    Discussion

On appeal, Thomas argues that the district court abused its discretion by only considering the affidavits of certain individuals—Hall, Lawson, and Gadson—and not others—Appiah and Mosley, and by denying her request to compel discovery. Thomas also argues that the district court erred in granting APS's motion for summary judgment because she produced sufficient evidence to support her disparate treatment claim.

> A. *The district court did not abuse its discretion by only considering certain affidavits and denying Thomas's request to compel discovery.*

Thomas argues that the district court erred by relying on the affidavits of Hall, Lawson, and Gadson. She states that they were never identified as witnesses who could speak to the qualifications of APS's employees, yet they testified to Anderson-Davis's qualifications for the position of AP. She asserts that this error was "manifest injustice" because the court refused to consider the affidavits of Appiah and Mosley, which rebutted APS's affidavits and created genuine issues of material fact. Thomas also argues that the district court erred by refusing to require APS "to engage in good faith discovery" despite the fact that it suppressed "pertinent documents," specifically, evidence that APS received notice of her EEOC complaint.

We review a district court's rulings on admission of evidence for abuse of discretion. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). We review a district court's decision to strike affidavit testimony on summary judgment for abuse of discretion. *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014). We "review[ ] a district court's denial of a motion to compel discovery" for "abuse of discretion." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

Under Federal Rule of Civil Procedure 26, parties to a lawsuit must disclose, among other things, "the name . . . of each individual likely to have discoverable information . . . that the

disclosing party may use to support its claims or defenses . . . at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(A)(i), (a)(1)(C). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether the exclusion of an undisclosed witness is an abuse of discretion, we consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party." *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir. 1982).

The district court did not abuse its discretion by considering the affidavits of Hall, Lawson, and Gadson. *See Furcron*, 843 F.3d at 1304. As for Hall and Lawson, there was no basis for the court to decline to consider their affidavits under Rule 37(c)(1) because APS identified them as potential witnesses in its initial disclosures. As for Gadson, while APS did not explain why it did not identify Gadson as a potential witness in its initial disclosures, Gadson's testimony is significant given that he was one of the decisionmakers behind Thomas's termination. And Thomas was not prejudiced by the court's decision because she identified him as a potential witness in her own initial disclosures, which indicates her awareness of his role in the conduct underlying the

proceedings. *See Fabrica Italiana Lavorazione Materie Organiche*, 684 F.2d at 780.

Next, the district court did not abuse its discretion by declining to consider the affidavits of Appiah and Mosley. *See Evans*, 762 F.3d at 1295. Thomas did not include Appiah or Mosley in her initial disclosures, and there was no reason that APS would have known that she might use their statements to oppose its summary-judgment motion. Thomas did not explain her failure to disclose Appiah or Mosley as witnesses, and APS was prejudiced by Thomas's failure to disclose them because it had no chance to depose them before filing its motion. *See Fabrica Italiana Lavorazione Materie Organiche*, 684 F.2d at 780.

Lastly, the district court did not abuse its discretion by denying Thomas's request to compel APS to produce discovery. *See Holloman*, 443 F.3d at 837. Thomas did not show that APS withheld any documents from her, but claimed generally that it was doing so without pointing to anything specific. The district court's decision not to compel APS to produce evidence that did not obviously exist was not an abuse of discretion.

B. *The district court did not err in granting summary judgment on Thomas's disparate treatment claim.*

Thomas argues that the district court erred in granting summary judgment to APS because she created genuine issues of material fact to support her claims. She asserts that she submitted evidence that APS's abolishment plan was "a tool to effect a malicious termination." She also contends that the district court's

analysis about Anderson-Davis was "fundamentally wrong" because it erroneously referred to her as a man, failed to consider that Thomas was more qualified than Anderson-Davis based on her "certification and decades of experience," and refused to examine whether Anderson-Davis had filed any grievances against APS.  Next, Thomas argues that the court erred in its application of the standard of review when it found that she had to produce statistical evidence that APS had a pattern or practice that disparately impacted her because of her age.  And she explains that, by placing the abolishment decision in the hands of local principals, APS was enabling them "to hastily fabricate employee evaluations and terminate the . . . scores of older employees," noting that nearly 200 former employees of APS have brought age-discrimination and retaliation claims against it.

We review "a district court's grant of summary judgment *de novo*, applying the same legal standards applied by the district court." *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1303 (11th Cir. 2003).  A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We must "view the summary judgment record in the light most favorable to the non-moving party, and [must] draw all reasonable inferences in favor of the non-moving party." *Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1337 (11th Cir. 2023). "If the nonmoving party fails to 'make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue as to any material fact,"

because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1309 (11th Cir. 2011) (ellipsis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual" who is at least 40 years old "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). "To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). A plaintiff can make this showing through either direct or circumstantial evidence. *Id.* A plaintiff can also make this showing "by demonstrating through statistics a pattern of discrimination." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329–30 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

"When an ADEA claim . . . is based on circumstantial evidence, [this Court] appl[ies] the framework established in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Liebman*, 808 F.3d at 1298. But for claims of age discrimination in relation to a reduction in force, we apply an altered standard for establishing a prima facie case. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th

Cir. 2005). To establish a prima facie case for such claims, a plaintiff must show (1) that they were within the protected age group, (2) that they were adversely affected by the reduction in force, (3) that they were qualified to assume another position at the time of discharge, and (4) "'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Id.* (quoting *Williams v. Gen. Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B Sept. 1981)). To satisfy the fourth prong, the "plaintiff [must] produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the factfinder reasonably to conclude either that the defendant (1) consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) regarded age as a negative factor in such consideration." *Id.* (alteration in original) (quoting *Williams*, 656 F.2d at 129–30).

The district court did not err in granting summary judgment. Thomas failed to provide sufficient statistical, direct, or circumstantial evidence to create a genuine issue of material fact as to whether APS discriminated against her because of her age.

First, other than Thomas's unsubstantiated claim that over 200 discrimination cases have been filed by APS employees, Thomas failed to present any statistical evidence showing that APS was engaged in a pattern of discrimination. *See Earley*, 907 F.2d at 1081.

23-11101                Opinion of the Court                17

Second, Thomas provided no direct evidence that APS discriminated against her because of her age. *Compare Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Cmmrs.*, 512 F.3d 1296, 1300 (11th Cir. 2008). Okoka's and Brown's comments about Thomas's age were not direct evidence of age discrimination because they were not decisionmakers in any of the actions that Thomas alleged were adverse employment actions. *See Standard*, 161 F.3d at 1330. Further, even if Thomas created a genuine issue as to whether the decisionmakers behind the abolishment of her position, Parker and Gadson, were aware of those comments, that would still not be direct proof that either Parker or Gadson held a discriminatory attitude towards Thomas. *Compare Van Voorhis*, 512 F.3d at 1300. Further, neither Hall's nor Gadson's comments constitute direct evidence of discriminatory animus. Hall's comment that "[n]o one is going to give you a job" did not have any direct connection to Thomas's age, and it was made six months after the decision to abolish her position. Additionally, Gadson's comment in his affidavit that he "did want her to be deterred" was obviously a typographical error.[5]

---

[5] We reach this conclusion for multiple reasons. First, APS submitted an email exhibit in which Gadson confirmed that this statement was a typo, and that it should read that he "did *not*" want her to be deterred. Second, Gadson's statement in the affidavit does not make sense in context. In the same sentence as the relevant phrase, Gadson stated that he "told her that she should file a complaint with APS Employee Relations if she wanted her concerns to be investigated further," reflecting that he did *not* want her to be deterred from pursuing her complaint.

And third, Thomas does not provide sufficient circumstantial evidence to meet her prima facie burden. Thomas cannot prove that a substantially younger person filled her position because she was not replaced—her position was abolished.[6] And she has failed to satisfy the altered *McDonnell Douglas* standard for reduction-in-force cases. *See Rowell*, 433 F.3d at 798. Specifically, she has failed to produce evidence that APS either "'(1) consciously refused to consider retaining or relocating [her] because of [her] age, or (2) regarded age as a negative factor in such consideration.'" *See id.* (quoting *Williams*, 656 F.2d at 129–30). Thomas has provided no evidence that either Parker or Gadson considered Thomas's age at all in their decision to abolish her position. And even if Thomas created a genuine issue as to whether Parker and Gadson knew that Okoka was making comments about Thomas's age, their knowledge of those comments does not alone indicate

---

But even if this were not a typo, Gadson stating that he wanted Thomas to be deterred does not sufficiently move the needle on Thomas's discrimination claim. While Gadson telling Thomas that he did not want Thomas to pursue her claims of alleged harassment against other APS employees is perhaps relevant to a retaliation claim (which Thomas abandoned, *see infra* note 9), such a statement has minimal probative value as to whether Gadson fired Thomas because of her age.

[6] While Thomas emphasizes that Okoka was substantially younger than her and was hired as an assistant principal after she was fired, Okoka did not replace Thomas. Aside from there being no evidence of when Okoka was hired or what her duties were, APS abolished Thomas's position, meaning that instead of three assistant principals, Crim had only two assistant principals. Okoka was then hired into one of the two assistant principal positions remaining after Thomas's position was abolished.

23-11101                Opinion of the Court                19

that they considered her age when they decided to abolish her position. Finally, there is no inference of age discrimination to be drawn from the fact that her comparators—Anderson-Davis and Coleman—kept their positions instead of Thomas.  Only Thomas had a performance write up, and Coleman was three years older than Thomas.[7]

For these reasons, we affirm the judgment of the district court.[8]

_____

[7] Similarly, while not raised by Thomas, the record did not present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (footnote omitted) (internal quotation marks omitted). Under such a framework, "we look beyond the prima facie case to consider all relevant evidence in the record to decide the ultimate question of intentional discrimination." *Tynes v. Fla. Dep't of Juvenile Justice*, 88 F.4th 939, 947 (11th Cir. 2023).  But whether we apply the *McDonnell Douglas* test or look for a "convincing mosaic," Thomas must still point to enough evidence for a reasonable factfinder to infer that she was fired because of her age.  For the reasons discussed above, Thomas has failed to produce evidence that could create an inference that Parker or Gadson abolished her position because of her age.

[8] Thomas abandoned any challenge to the district court's grant of summary judgment on her retaliation claim. *See Access Now, Inc.*, 385 F.3d at 1330. Thomas does not list her retaliation claim in her statement of the issues, does not have a heading devoted to her retaliation claim, and does not set out the legal standard for a retaliation claim, let alone make any explicit arguments challenging the district court's conclusion that she failed to show the causation element required to establish a prima facie case of retaliation.  *See id.*  Instead, Thomas merely states one time in passing that the EEOC complaints she filed "years ago" were sufficient for the factfinder to find that she was retaliated against, without citing any authority or elaborating with any argument about

20                    Opinion of the Court                    23-11101

**AFFIRMED.**

---

how that alone suggests retaliation.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (holding that party abandoned conclusory arguments that were made only in passing).