[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11 2007
THOMAS K. KAHN
CLERK

————————————————

No. 06-13974

————————————————

D. C. Docket No. 04-01542-CV-ORL-28-DAB

DAWN GEORGETTE MYERS,

Plaintiff-Appellant,

versus

CENTRAL FLORIDA INVESTMENTS, INC.,
DAVID SIEGEL,
WESTGATE RESORTS, INC.,
WESTGATE RESORTS LTD,
CFI SALES AND MARKETING, LTD,

Defendants-Appellees,

WESTGATE LAKES, INC.,
et al.,

Defendants.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(June 11, 2007)**

Before CARNES and WILSON, Circuit Judges, and WALTER,[*] District Judge.

PER CURIAM:

Dawn Georgette Myers sued Central Florida Investments, Inc. and its various subsidiary companies (collectively CFI), claiming that she was sexually harassed by CFI's president and CEO, David Siegel, and ultimately fired for rejecting his advances. CFI develops, manages and sells resort timeshares in Orlando, Florida, and during her employment with the company, Myers served as executive director of a new spa at one of CFI's resorts.

The district court dismissed three of Myers' claims[1] and then granted summary judgment to CFI on her remaining claims of sexual harassment and retaliation, which asserted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 509.092, 760.01–.11. The court also remanded her state law claims of battery and false imprisonment to state court.[2] Myers now appeals the district

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

[1] The other three counts that had already been dismissed raised claims of retaliation under the Florida Private Whistleblower Act, inducement to prostitution, and negligent retention and supervision.

[2] In light of our determination that Myers' FCRA and Title VII sexual harassment claims survive summary judgment, her state-law battery and false imprisonment claims should be reinstated.

court's grant of summary judgment as well as its denial of her third motion to compel discovery.

The FCRA claims stand or fall with the Title VII claims, so our analysis focuses on the federal allegations. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Our review of the district court's grant of summary judgment is de novo, and we are to "view all the evidence, and make all reasonable factual inferences, in the light most favorable to the nonmoving party." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003). Additionally, we review the district court's decision to grant or deny Myers' motion to compel discovery for abuse of discretion. R.M.R. v. Muscogee County Sch. Dist., 165 F.3d 812, 816 (11th Cir. 1999).

## I.

First, we will consider Myers' sexual harassment claim. We have made clear that "[t]o prove sexual harassment under Title VII, a plaintiff must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." Hulsey

v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).  The district court found that Myers established the first three factors but failed to prove the fourth.  Accordingly, the court did not address the fifth factor.  So our review now centers on the fourth factor—Myers' ability to show the alleged harassment was sufficiently severe or pervasive.  In attempting to establish this claim, there are two theories of harassment that a plaintiff can assert, and Myers asserts both.  She contends that she suffered sexual harassment under both the tangible employment action theory and the hostile environment theory.  We consider each in turn.

To sustain a sexual harassment claim under the tangible employment action theory, Myers must show that her refusal of Siegel's advances resulted in a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998).  There is no question that her termination constituted a "tangible employment action," but in order to sustain the claim she must show that she was terminated because she refused Siegel's sexual demands.  Hulsey, 367 F.3d at 1245.

After reviewing the evidence in the light most favorable to Myers, we agree with the district court's determination that Myers failed to sufficiently link her

termination to her relationship with Siegel. Under her version of the facts, she kept Siegel at bay for a full five years, receiving multiple promotions and pay raises during that time. Although she claims that Siegel's attitude toward her changed when she became engaged to another man, she offers no evidence that Siegel was even aware of the engagement. Furthermore, Myers certainly knew that the CFI executives were unhappy with the spa's performance and were holding her responsible. Myers failed to offer evidence rebutting CFI's evidence that she was terminated because of the spa's lack of profitability. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1312–13 (11th Cir. 2001) (affirming grant of summary judgment on tangible employment sexual harassment theory because there was "unrebutted evidence showing that [the plaintiff] was denied the promotion . . . on grounds independent of the alleged harassment"). Because Myers could not establish a connection between her termination and her rejection of Siegel, her sexual harassment claim cannot survive summary judgement on the tangible employment action theory.

Nevertheless, although we reject the tangible employment action theory, we find that Myers did present sufficient evidence to create a genuine issue of material fact as to whether she experienced a hostile work environment at CFI. The district court found that Myers was unable to show that the harassment she

5

suffered was both objectively and subjectively severe or pervasive. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22, 114 S. Ct. 367, 370 (1993) (noting that a plaintiff must demonstrate both that a reasonable person would have found the environment to be hostile and that she herself subjectively viewed the environment as abusive). We disagree. If we read the evidence, as we must, in the light most favorable to Myers, it is clear from the record that she has alleged events sufficient to show both a subjective perception and an objective basis for a hostile work environment at CFI.

As to the subjective prong, Myers has set forth evidence from which a reasonable factfinder could determine that she personally felt harassed while working at CFI. Chief among the evidence offered was her own deposition testimony to that effect. She claimed that Siegel's conduct "mortified" and "embarrassed" her on multiple occasions, and the district court's order notes that she was "uncomfortable" with Siegel's conduct and asked him to stop.

Specifically, Myers testified that she asked Siegel to dispel rumors that they were a couple, but he refused, reveling in the gossip around the company. He gave her roses at work on several occasions, and she was "mortified" that she had to leave the office with them for everyone to see. At a company banquet, when Siegel introduced her to the audience, he told everyone that although she was not

6

his date, he wished she were and had asked her but been turned down. Again, Myers claimed she was mortified and humiliated in front of her colleagues by this conduct. Myers also testified that Siegel goaded her into serenading him on stage at a CFI costume benefit and then simulated an erection under the napkin she had placed on his lap. Although no one else testified to seeing the improper hand gesture, two CFI employees submitted affidavits testifying that Myers tried to maintain her composure on stage and then left the room crying. Furthermore, Myers claims that Siegel promised her money and gifts if she would date him, at one point giving her an unexplained $10,000 check. She also alleges that Siegel publically offered her and her boyfriend $1 million on several occasions for one night with her.

Accordingly, there is sufficient record evidence, for the purposes of overcoming the summary judgment hurdle, to permit a jury to find that Myers subjectively perceived an abusive working environment during the five years in question. Even though there is evidence to the contrary—she continued to seek out Siegel and put herself in compromising positions by traveling with him—Myers still has created a genuine question of material fact about her subjective perception.

Likewise, a reasonable person could have objectively perceived an abusive

7

work environment based on Siegel's conduct toward Myers. The Supreme Court has directed us "to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including [1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787–88, 118 S. Ct. 2275, 2283 (1998) (quotations omitted). We are to consider the four factors under a "totality of the circumstances" approach, careful not to fixate on a plaintiff's inability to show a single factor. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).

Regarding the first factor, Myers' testimony indicates that the harassing conduct was frequent. The court's order states that Myers alleges only ten to twenty touchings, but the court bases that conclusion on the portion of Myers' deposition where she claims that Siegel touched her legs ten to twenty times while they were dining at a specific restaurant. She testified to many more than ten to twenty touchings over the five-year period. In addition to the ten to twenty touchings of her leg that occurred at a particular restaurant, Myers testified that Siegel touched her almost every time she came into a room, acting like she was his girlfriend, putting his arm around her, and slapping her on the butt. She also

alleges that he would put his hand on her legs and rub her legs while she was sitting next to him. He would put his arms around her and let his hands fall to her butt. The conduct happened so often that she cannot remember the details of each instance. Myers testified that Siegel kissed her at least three times, ran his hands up her legs while she was performing spa treatments on him on several occasions, and pinned her up against the wall of the spa lobby at least twice.

Regarding the second factor, Myers alleges conduct that was sufficiently severe, when taken in light of its frequency, for a reasonable person to find a hostile work environment. If her testimony is accepted, she was hugged, groped and even kissed, often in public, on multiple occasions while working for CFI. As to the third factor, Myers did not have to feel physically threatened by Siegel; humiliation is an equal consideration. Faragher, 524 U.S. at 787–88, 118 S. Ct. at 2283 (noting that the conduct can be physically threatening or humiliating). There is no question, that a reasonable person subjected to this kind of unwelcome conduct at work would feel humiliated.

Finally, as to the fourth factor, "[t]he Supreme Court has cautioned that harassment need not be shown to be so extreme that it produces tangible effects on job performance in order to be actionable. Thus, having established the frequency, severity, and humiliating nature of the conduct, [the plaintiff's] failure to establish

9

convincingly how [the employer's] conduct interfered with his duties is not fatal to his hostile environment claim, given the totality of the circumstances." Miller, 277 F.3d at 1277. Even so, a jury reasonably could infer that Siegel's open pursuit of Myers made it more difficult for her to perform her job and command the respect of her subordinates at the spa. See Harris, 510 U.S. at 25 (Ginsburg, J., concurring) ("It suffices to prove that a reasonable person subjected to the discriminatory conduct would find . . . that the harassment so altered working conditions as to make it more difficult to do the job." (quotation and alteration omitted)).

Therefore, Myers has sufficiently demonstrated both a subjective and an objective perception of hostility sufficient to overcome summary judgment on her hostile work environment theory. For summary judgment purposes she has established the fourth prong of the test—the harassment was severe or pervasive enough to alter the conditions of her employment. Additionally, although the district court did not reach the fifth prong of the test—the existence of a basis for holding the employer liable—Myers has adequately shown, for summary judgment purposes, that CFI was aware of her allegations of harassment and failed to take action. See Miller, 277 F.3d at 1278–79 (noting that "[i]n order to establish a basis for holding [an employer] liable for a hostile work environment, [the

10

plaintiff] must show that [the employer] had notice of the alleged harassment and failed to take immediate and appropriate corrective action"). Myers, therefore, is entitled to a jury determination on her federal and FCRA sexual harassment claims, and the district court's grant of summary judgment was improper.

## II.

As to Myers' retaliation claim, the district court properly concluded that she failed to offer evidence supporting a causal connection between any protected activity and her termination. Stavropoulous v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004).[3] Her "formal" complaints to management did not occur until after meetings regarding the spa's lack of profitability. And, as the district court noted, even if Myers did establish a prima facie retaliation case, CFI has met its burden of offering a legitimate, nondiscriminatory reason for her termination under the applicable McDonnell-Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 1824 (1973). There is no question that the spa's profitability was a primary concern of CFI management and that they questioned Myers' ability to run the operation. Even if the district court

---

[3] As to Myers' post-termination retaliation claim, we find that her claim fails because she cannot show that Siegel's decision to file an unrelated lawsuit against her was an action that "would have been materially adverse to a reasonable employee or job applicant," such that "that the employer's actions [were] harmful to the point that they could well [have] dissuade[d] a reasonable worker from making or supporting a charge of discrimination," Burlington N. & Santa Fe Ry. Co. v. White, 548 — U.S. —, 126 S. Ct. 2405, 2409 (2006).

11

erred in relying on the other proffered reasons for Myers' termination (allegations of employee misconduct and complaints filed against Myers), any such error was harmless because the spa's loss of money was a sufficient nondiscriminatory reason for her termination.  Just as her tangible employment action theory of sexual harassment fails, Myers cannot sustain a viable retaliation claim.

### III.

Finally, we find that the district court did not abuse its discretion in denying Myers' third motion to compel.  Our review here is highly deferential, and "we will not second-guess the district court's actions unless they reflect a 'clear error of judgment.'"  Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (quoting United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989)).  There was no such "clear error" here in refusing to grant a motion to compel filed eighty-eight days after discovery had closed.

**AFFIRMED in part VACATED in part and REMANDED.**